Waldron W. DUNCAN, Appellant,

v.

C.F. LICHTENBERGER and D.M.
Hogness, Appellees.

No. 2–83–096–CV.

Court of Appeals of Texas,
Fort Worth.

May 16, 1984.

Law Offices of Jim Claunch and Jim
Claunch, Richard Alley, Fort Worth, for
appellant.

Hudson, Keltner, Smith, Brants &
Sparks and R. Brent Keis, Fort Worth, for
appellees.

Before HUGHES, ASHWORTH and JOE SPURLOCK, II, JJ.

OPINION

JOE SPURLOCK, II, Justice.

This is a suit grounded in equity where appellees sought damages for a breach of fiduciary duty owed by appellant, Waldron W. Duncan, to them, C.F. Lichtenberger and D.M. Hogness. Based on the jury's verdict, the trial court entered judgment against Duncan and in favor of appellee Lichtenberger for the amount of $13,600.00, and of appellee Hogness for the amount of $12,400.00. Duncan, the defendant below, appeals.

We affirm.

The appellant raises five points of error. Points of error one, two, three and four contend that there is either no evidence or insufficient evidence to support the submission of and affirmative answers to Special Issues Numbers 19, 20, 27 and 28. Point of error five contends the court erred in rendering judgment on the jury's verdict.

Special Issues Numbers 27 and 28 state, "[w]hat do you find from a preponderance of the evidence to be the amount of exemplary damages, if any, that should be awarded to" appellee, D.M. Hogness and C.F. Lichtenberger respectively. The jury answered both special issues affirmatively in the amount of $8,000.00. We note that the judgment of the court does not award exemplary damages. We find that appellant's points of error one, two, three and four in regard to Special Issues 27 and 28 are moot and will not be addressed by this Court.

To understand the remaining parts of the points of error, it is necessary to review the evidence. In the early part of 1973, Duncan, Lichtenberger, Hogness, and three other persons who are not parties in the present suit, Dr. Warren Cross, Ray Gilbert and Matthew J. Roberto, formed a limited partnership for the purpose of operating a night club. The club, called the "I Gotcha Club", was opened in June of 1973 and was located in Fort Worth, Texas. The partners had met while living in the same Fort Worth apartment complex and known each other for some time before entering into the limited partnership. In the original limited partnership, Duncan, Lichtenberger, and Ray Gilbert were the general partners. Hogness, Dr. Warren Cross and Matt Roberto were the limited partners. Shortly after the club was opened, Ray Gilbert dropped out of the partnership.

Duncan and Lichtenberger, acting as general partners, managed the club and handled all of the business decisions. In the event of a disagreement between these two general partners, they agreed to allow the decision of Hogness to control. In the fall of 1975, Hogness began keeping the books for the partnership. Around June of 1976, she began working in the club and taking a more active role in the management and upkeep of the club.

In the early part of 1978, the partnership agreed to expand and remodel the club's facilities. It was agreed by all the partners that the business should be incorporated. Duncan took the affirmative steps to incorporate the business. The other partners acquiesced in his actions. On May 15, 1978, the Secretary of State issued a certificate of incorporation for "Phase III, Inc." The articles of incorporation stated that the "number of directors constituting the initial board of directors is *one*" and the named director was Waldron W. Duncan. The articles of incorporation also provided that "[t]he power to alter, amend, or repeal the Bylaws is hereby vested in the Board of Directors," and that "[d]irectors shall be elected by plurality vote. Cumulative voting shall not be permitted." Both Lichtenberger and Hogness testified that they were never allowed to see the articles of incorporation.

The partnership was dissolved and each of the five partners conveyed their interest in the partnership, including physical as-

sets and cash on hand, to the corporation. This conveyance of assets plus a cash conveyance in the amount of $10,000.00 per partner gave each of the five individuals an equal twenty percent share in the corporation. Lichtenberger paid $10,000.00 and conveyed his partnership interest, including his share of the partnership cash account in the amount of $3,600.00, to receive his twenty percent share. Hogness paid $10,000.00 and conveyed her partnership interest, including her share of the partnership cash account in the amount of $2,400.00, to receive her twenty percent share.

In June of 1978, all of the shareholders in the newly formed corporation agreed to apply for tax status under subchapter S of the Internal Revenue Code. Each of the investors signed the Election by a Small Business Corporation. On August 28, 1978, the corporation was granted tax status as a subchapter S corporation.

Following incorporation, informal shareholders' meetings were held. Hogness was appointed as secretary-treasurer of the corporation. Duncan won the presidency of the corporation by virtue of a coin flip between himself and Lichtenberger, who became vice-president. No elections were held for officers of the corporation or for a board of directors. Informal meetings were held, but no minutes and very few notes were ever taken by Hogness.

The purpose of the $10,000.00 cash conveyance by each partner was to finance the remodeling operation. After incorporation and during the remodeling operation, the corporation began to experience financial difficulties and was unable to meet some bills. The full extent of this financial difficulty was not revealed at trial, and there was conflicting testimony as to its severity.

In early October of 1978, a shareholders' meeting was held to discuss the financial troubles. All of the shareholders attended this meeting. The meeting ended, with no resolution of the problem, when Duncan walked out stating that he was unwilling to invest any more in the club. About this same time, Duncan offered to buy out each of the other investors. Duncan offered Hogness and Lichtenberger $2,500.00 each for their respective shares in the corporation. These offers were rejected by both appellees. On October 30, 1978, Duncan did buy Roberto's and Cross' twenty percent shares of the corporation for $11,200.00 each.

Following incorporation, Duncan and Lichtenberger had continued to manage the club and Hogness had continued to act as bookkeeper and secretary. Each of these persons had a key to the entrances of the club. On October 31, 1978, Lichtenberger and Hogness arrived at the club at approximately 11:00 a.m. Both Lichtenberger and Hogness tried, without success, to open various doors with their keys. Lichtenberger and Hogness left but later returned to the club to find Duncan letting in a vendor. Lichtenberger and Hogness went to their respective offices in the club. At this point, Duncan informed them that he was now the majority owner and that they were both fired from their positions with the club. He ordered them to leave and not return. Duncan informed a manager of the club, Ronald Woolery, that he, Duncan, had a restraining order against Lichtenberger and Hogness and that they were not to be allowed on the premises. If they attempted to enter, the police were to be called. At trial, Duncan admitted that no restraining order ever existed.

In describing his reasons for the firing and locking-out of Lichtenberger and Hogness, Duncan, in a deposition, stated that "[t]he company was going under, and it was my judgment that the only thing to do to save it was to take control of the corporation and try to save it." The deposition of Ronald Woolery reveals that Duncan had stated that he, Duncan, felt "that he could manage and run the club better himself; that they [Lichtenberger and Hogness] had been lacking in their responsibilities, and that he could do a better job on his own than he could with them." No

evidence was presented at trial as to how Lichtenberger and Hogness had been lacking in their responsibilities.

It is undisputed that stock certificates for "Phase III, Inc." have never been issued to any of the shareholders. Lichtenberger and Hogness are carried on the corporation books as twenty percent shareholders in "Phase III, Inc." It is also undisputed that following the incident of October 31, 1978, Lichtenberger and Hogness were never notified of any shareholders' meetings or board of directors' meetings. Duncan testified that he was the only person present at the shareholders' and board of directors' meetings held subsequent to October 31, 1978.

Following October 31, 1978, Duncan assumed total control of the corporation and management of the club, Phase III. Since that time, no shareholders' votes have been taken concerning corporate matters, and no opinions or suggestions from the other shareholders concerning management of the business have been accepted. Duncan, in his deposition, stated that the other shareholders were never given notice of any corporate actions following the incident in October of 1978.

The 1981 income tax return for "Phase III, Inc.", reveals that Duncan received management fees of $26,077.00. Duncan received compensation as an officer of the corporation in the amount of $7,800.00 and had access to a company vehicle. Duncan was the only person who could sign on the corporation's bank account and he signed all corporate checks. The 1981 tax return reflects shareholders' undistributed taxable income of $62,369.11. Lichtenberger and Hogness never received any compensation as corporate officers and no dividends were ever distributed to shareholders.

Duncan's deposition revealed that he loaned $5,000.00 to the corporation which loan was secured by an interest bearing promissory note signed and approved by Duncan as officer and director of the corporation. Duncan testified that he was re-modeling the club and that there was no money available to pay out in dividends. Duncan further testified that subsequent to October 31, 1978, he bought two other local nightclubs, the Speak-Easy and Quick Draw.

Both Hogness and Lichtenberger testified about Duncan's business philosophy. Duncan admired the Beard brothers, then owners of the Speak-Easy and Quick Draw, as shrewd business persons. Lichtenberger testified, concerning Duncan's business philosophy, that the Beard brothers,

> had a business associate that worked with them, ... and she was creating some problems in their system and they were able to squeeze her out and then when they squeezed her out they also did it in such a manner that they were going to be able to hide any profits and stuff and he [Duncan] thought that was pretty neat, that she got squeezed out and she never got a cent.

Suit was filed on July 20, 1979. On March 28, 1983, trial to the jury commenced. Upon a jury verdict in their favor, the trial court rendered judgment for the appellees.

Duncan's points of error one, two, three and four contend that there is either no evidence or insufficient evidence to support the submission of and the jury's affirmative answers to the damage issues in Special Issues Numbers 19 and 20. (We have previously addressed the complaint about Special Issues 27 and 28.) The proper standard of review to be applied in reviewing "no evidence" and "insufficient evidence" points was well stated by Justice Spurlock, Sr., in *Lane v. Favors*, 622 S.W.2d 656, 659 (Tex.App.—Fort Worth 1981, no writ) wherein he stated:

> In addressing the "no evidence" points, we must look only to the evidence which supports the trial court's findings and conclusions and disregard all evidence to the contrary. In reviewing appellant's "insufficient evidence" or "great weight" points of error, we must consider and

weigh all the evidence in the record and set aside the verdict if it is so against the great weight and preponderance of the evidence as to be manifestly unjust or if the evidence is factually insufficient to support a finding of a vital fact. Calvert, *"No Evidence" and "Insufficient Evidence" Points of Error*, 38 Texas L.Rev. 361 (1960).

(*See also* Justice Hill's discussion in *Prairie Valley Ind. School Dist. v. Sawyer*, 665 S.W.2d 606, 609 (Tex.App.—Fort Worth 1984, no writ).)

Special Issues Numbers 19 and 20 stated: What sum of money, if any, if paid now in cash, do you find from a preponderance of the evidence would fairly and reasonably compensate [D.M. Hogness (# 19) and C.F. Lichtenberger (# 20) respectively] for:

> (a) The loss of [her/his] $10,000.00, if any; ...
>
> (b) The loss of [her/his] non-cash assets in the limited partnership, if any; ...
>
> (c) The loss of [her/his] cash in the limited partnership, if any....

The jury answered sub-part (a) of both special issues affirmatively in the amount of $10,000.00. Sub-part (b) of both special issues was answered as *none*. Sub-part (c) to Special Issue 19 was answered affirmatively in the amount of $2,400.00 and sub-part (c) to Special Issue 20 was answered affirmatively in the amount of $3,600.00. For the reasons stated below, we find that there is more than sufficient evidence to support both the submission of and the jury's affirmative answers to Special Issues Numbers 19 and 20.

In Special Issues Numbers 14, 15 and 16, the jury found that Duncan had breached a fiduciary duty owed to both Hogness and Lichtenberger. In Special Issues Numbers 17 and 18, the jury found such breach of a fiduciary duty by Duncan was the proximate cause of damages suffered by Hogness and Lichtenberger. Then appeared the jury's findings in Special Issues Numbers 19 and 20. By following this logical progression, it is apparent that the jury found that a fiduciary duty had been breached, that such breach was the proximate cause of damages and that the damages could be compensated for by a set dollar amount.

■ The courts of this State recognize that "[t]he relationship of officers and directors to a corporation is a fiduciary one imposing upon them the duty to exercise their powers as officers and directors solely for the benefit of the corporation and its stockholders." *Canion v. Texas Cycle Supply, Inc.*, 537 S.W.2d 510, 513 (Tex.Civ. App.—Austin 1976, writ ref'd n.r.e.). It has commonly been recognized by the courts that equitable relief is available for a breach of fiduciary duty. The Supreme Court of Texas in *International Bankers Life Ins. Co. v. Holloway*, 368 S.W.2d 567 (Tex.1963), found that the defendants had breached a fiduciary duty owed to the corporation and stated, "[t]here should be a deterrent to conduct which equity condemns and for which it will grant relief. The limits beyond which equity should not go in its exactions are discoverable in the facts of each case which give rise to equitable relief." *International Bankers, supra* at 584.

This Court in *Kingsbury v. Phillips*, 142 S.W. 73 (Tex.Civ.App.—Fort Worth 1911, no writ), recognized a cause of action based on facts similar to the present case. In *Kingsbury*, the plaintiff was the owner of one-half of the capital stock in a corporation. The plaintiff alleged that the defendants, owners of the other one-half of the capital stock, had excluded the plaintiff "from participation in the management of the affairs of the corporation, and have dissipated all of the assets of that company, or have converted the same to their own use and benefit, thus destroying the object for which the corporation was created, and rendering it impossible for the company to resume its business." *Kingsbury*,

*supra* at 74. It was also alleged that "[t]he defendants, ... although often requested by Mrs. Kingsbury, have refused to recognize her as a stockholder, have refused to recognize the legal existence of the corporation, and have refused to have any meetings of the stockholders for the purpose of electing directors or officers, and have employed the assets and business of the corporation exclusively for their own use and benefit." *Kingsbury, supra* at 74. This Court stated that "[t]he allegations noted, if true, certainly show a cause of action in favor of the" corporation, and "[i]f the corporation no longer has a legal existence by reason of the facts alleged, ... then plaintiffs would have the right to recover for the conversion of such interest in the assets of the corporation as was represented by the capital stock owned by Mrs. Kingsbury." *Kingsbury, supra* at 74.

The Supreme Court of Texas in *Patton v. Nicholas*, 154 Tex. 385, 279 S.W.2d 848 (1955) determined that the petitioner, defendant, who owned sixty percent of the stock in the corporation compared to forty percent of the stock owned by plaintiffs, had effective control of the board of directors and utilized such control "for the malicious purpose of, and with the actual result of, preventing dividends and otherwise lowering the value ... of the stock of the respondents." *Patton, supra*, at 853. The Court then found that by virtue of such actions, "the ability of the respondents to hold their stock or to sell it to third parties for a fair value would be lessened by the absence of dividends" and that certain statements by the petitioner, defendant, could "be interpreted as indicating a purpose to acquire it," the stock of the respondents, plaintiffs, "eventually for much less than its value." *Patton, supra*, at 853. The Supreme Court then sustained a finding of malicious suppression of dividends by the lower court, and went on to state, "[u]ndoubtedly the malicious suppression of dividends is a wrong akin to breach of trust, for which the courts will afford a remedy." *Patton, supra*, at 854.

The only distinguishing characteristic between the *Kingsbury* and *Patton* cases and the present case is the form of relief prayed for. In the present case, the plaintiffs requested judgment against the defendant for restoration, to the plaintiffs, of the consideration conveyed by them to the defendant for shares of stock in the corporation. This was the remedy granted by the court based on the jury's verdict for the plaintiffs. The appellant does not contend that such a remedy is not available to the plaintiffs. Instead, the appellant contends that there is insufficient evidence to support the submission of and affirmative answers by the jury to the damage issues. We do not agree with the appellant's contentions.

■ As previously stated, the jury found that the actions of appellant resulted in a breach of fiduciary duty owed to the appellees and that such a breach was the proximate cause of damages to the appellees. The breach of a fiduciary duty is the type of wrong for which the courts of this State will afford a remedy. *See International Bankers, supra; Kingsbury, supra; and Patton, supra.* We hold that such a finding by the jury in and of itself supports the submission of the damage issues to the jury.

■ The remedy chosen by the appellees in the present case was restoration of the monies conveyed to Duncan for their shares of stock in "Phase III, Inc." The evidence at trial was that both appellees had contributed $10,000.00, the physical assets of the limited partnership, plus Hogness' share of partnership cash on hand of $2,400.00 and Lichtenberger's share of cash on hand of $3,600.00. This evidence along with the jury's finding of a breach of fiduciary duty is sufficient to support both the submission of and the jury's affirmative answers to Special Issues Numbers 19 and 20. We overrule Duncan's points of error one, two, three and four.

Duncan's fifth point of error contends that the court erred in rendering judgment

954

on the jury's verdict. He argues that no jury findings were secured as to whether Duncan made representations that were false, which he knew to be false, or had no intention of performing in the future, so that appellees have not met their burden of proof to recover. He further argues that appellees are not entitled to recovery in that they have failed to prove the essential elements of actionable fraud, the predicate facts for the jury's assessment of actual damages does not exist. Appellant has cited us no case or statute requiring that fraud be found so as to sustain a finding of breach of fiduciary duty.

In the present case, the appellees plead two independent causes of action. One cause of action was based upon a theory of fraud and the other was based upon Duncan's breach of fiduciary duty owed to them. The jury found that no fraud had been perpetrated by Duncan. The jury did find that Duncan had breached a fiduciary duty owed to the appellees. The judgment rendered by the court was based upon this later finding. We find no authority stating that fraud is a required element of a cause of action based on breach of fiduciary duty. The existence of fraud could, under the proper circumstances, support a finding of breach of fiduciary duty. The existence of fraud is not, however, required for a breach of fiduciary duty to occur.[1] We overrule appellant's point of error five.

The judgment of the trial court is affirmed.

---

1. F.H. O'NEAL, OPPRESSION OF MINORITY SHAREHOLDERS §§ 7.13, 9.04 (1975).