Bonnie JOHNSON, on Behalf of Chelsea Elizabeth JOHNSON, Beneficiary, Appellant,

v.

Charles CHESNUTT, Appellee.

No. 05–05–01341–CV.

Court of Appeals of Texas, Dallas.

April 27, 2007.

Rehearing Overruled July 2, 2007.

Timothy W. Sorenson, Dallas, for Appellant.

Robert Glenn Chadwick, Addison, for Appellee.

Before Justices MORRIS, WHITTINGTON, RICHTER.

## OPINION

Opinion by Justice RICHTER.

Bonnie Johnson, next friend for Chelsea Johnson, appeals the trial court's award of death penalty sanctions and attorney's fees against her following her nonsuit of the case. In eight issues, categorized according to the particular rule or statute under which the sanctions are challenged, Bonnie argues that the trial court erred when it awarded sanctions under TEX.R. CIV. P. 215, TEX.R. CIV. P. 13, and TEX. CIV. PRAC. & REM.CODE ANN. § 10.004(b) (Vernon 2002). A motion requesting case-determinative sanctions was pending at the time of the nonsuit. Because the award of sanctions was not arbitrary, unreasonable, or unjust, the trial court did not abuse its discretion when it sanctioned Bonnie under TEX.R. CIV. P. 215. Because we conclude that the sanctions were properly awarded under TEX.R. CIV. P. 215, we need not consider whether the award was also appropriate under Rule 13 and the Civil Practice & Remedies Code. We affirm the judgment of the trial court.

### Factual and Procedural Background

Bonnie and Vernon Johnson were once partners in a law practice and in marriage. Vernon managed the finances for the Johnsons' business and household. The Johnsons established a trust for their daughter Chelsea, and asked their mutual friend Charles Chesnutt to serve as trustee. The trust contained an exculpatory clause relieving the trustee from liability for exercising his discretion unless his actions involved fraud or bad faith. Chesnutt delegated to Vernon the authority to make investment decisions for the trust. Bonnie was aware of this delegation of authority.

Bonnie and Vernon were subsequently engaged in a contentious divorce. After the divorce, Bonnie discovered that the value of the trust had declined and hired an attorney to evaluate whether she had a cause of action against Chesnutt. The attorney advised Bonnie that the decreased

value of the trust resulted from a fall in the market and declined to file suit.

Bonnie hired another attorney to file suit against Chesnutt. The suit, brought by Bonnie as next friend for Chelsea, alleged that Chesnutt had breached his fiduciary duty, but did not specifically allege fraud or bad faith.[1] The petition asserted that the trust had suffered losses in excess of $50,000, but did not specify the nature and amount of the damages alleged to have resulted from Chesnutt's conduct. The trust instrument was attached as an exhibit to the petition, but the petition made no reference to the exculpatory clause. Bonnie reviewed and approved the petition before it was filed.

After the case was filed, the trial court provided the parties with a list of court-specific policies, which included the "no continuance rule." The no continuance rule stated that the court would not grant continuances when the parties set the trial date themselves. The policies also required the parties to mediate the case no later than thirty days before trial. On July 28, 2003, the parties entered into an agreed level 3 scheduling order that established deadlines for the designation of experts and the close of discovery and set the case for trial on February 21, 2005. On July 29, 2003, the trial court issued a mediation order that required the parties to file any objections to mediation within ten days of the issuance of the order.

Although she did not appear as counsel in the lawsuit, the record reflects that Bonnie actively monitored the lawsuit. Over a period of approximately two years, Bonnie hired and fired three attorneys. Despite the number of attorneys who worked on the file, the request for initial disclosures that Chesnutt served at the inception of the lawsuit was never answered. Complete substantive answers to interrogatories were not provided. Bonnie failed to designate an expert witness or take Chesnutt's deposition before the close of discovery.

On December 1, 2004, Chesnutt filed a motion to compel and for sanctions. Chesnutt requested that Bonnie be compelled to answer the interrogatories and request for disclosures. Specifically, the motion urged that Bonnie be required to provide details on the alleged $50,000 loss in the trust and disclose the amount and any method of calculating damages. The motion also requested that Bonnie be compelled to provide the factual basis for her claims and contentions by providing responses to interrogatories numbered 3 and 5–21. In the alternative, Chesnutt requested that the court sanction Bonnie by excluding evidence of the amount and method of calculation of any alleged damages and the factual basis for her claims.

On December 16, 2004, Chesnutt filed a motion for summary judgment which alleged, *inter alia*, that Johnson acknowledged in her deposition testimony that she had no claim for fraud or bad faith. The motion was set for hearing on February 15, 2005. Bonnie did not respond to the motion.

Bonnie retained her fourth lawyer approximately one month before the February 22, 2005 trial. The new lawyer entered an appearance on January 7, 2005, the day of the hearing on Chesnutts' motion to compel. In an effort to avoid the consequences likely to result from the failure to timely designate an expert witness, Bonnie's new counsel moved for a continuance and requested an extension of the discovery deadlines. The court conducted an evidentiary hearing on January 14,

---

1. The only reference to fraud was in the request for exemplary damages, which generally alleged that Chesnutt "acted in a fraudulent and malicious manner."

2005. Although the court was not unsympathetic to the dilemma faced by Bonnie's recently-hired counsel, the court noted that Bonnie, an attorney, had taken an active role in the litigation. The motion for continuance was denied. The court ordered the parties to mediation, but at the request of Bonnie's counsel, extended the deadline to January 27, 2005. The court reserved its ruling on the motion for sanctions, but noted that even after the January 7 hearing Bonnie had failed to provide the discovery or respond to the motion to compel.

The parties scheduled a mediation to occur on January 25, 2005. On January 20, 2005, Bonnie nonsuited the case by filing a "Notice of Dismissal." On January 24, 2005, the day before the mediation was to occur, Bonnie filed an objection to mediation. The objection to mediation was not set for hearing and the court did not rule on the motion before the mediation was scheduled to begin. Chesnutt and his counsel appeared for the mediation at the appointed time, but Johnson and her counsel did not appear.

The court subsequently held a hearing on Bonnie's objection to the mediation. During the hearing, Bonnie's counsel advised the court that they would file the suit again as soon as Chelsea reached the age of eighteen. Chelsea was seventeen years old at the time.

On January 31, 2005, Chesnutt filed a document styled "Motion for Contempt and Amended Motion for Sanctions." The amended motion complained that Bonnie had taken a nonsuit rather than face the adverse consequences of a third motion to compel, a ruling on the summary judgment, or the upcoming trial. The amended motion also noted that Bonnie's objection to mediation was not timely under the court's policy. Chesnutt further complained about Bonnie's failure to comply with the court's mediation order. Chesnutt requested that the court sanction Bonnie by dismissing the case with prejudice and reimbursing Chesnutt for his defense costs. On February 1, 2005, the court entered a show cause order directing Bonnie and her counsel to appear and respond to Chesnutt's amended motion. After a two day evidentiary hearing at which Bonnie appeared and testified, the trial court made detailed findings of fact and conclusions of law and ordered a "death penalty" sanction and award of attorney's fees against Bonnie under Rules 215.3 and 13 of the Texas Rules of Civil Procedure, and Chapter 10 of the Texas Civil Practice and Remedies Code. On July 19, 2005, the trial court signed a judgment dismissing Bonnie's claims with prejudice and awarding Chesnutt his attorney's fees and costs. This appeal followed.

## Standard of Review

We review a ruling on a motion for sanctions under an abuse of discretion standard. *Cire v. Cummings*, 134 S.W.3d 835, 838 (Tex.2004). In so doing, we review the entire record, including the evidence, arguments of counsel, written discovery on file, and the circumstances surrounding the party's discovery abuse. *Response Time, Inc. v. Sterling Commerce North America, Inc.*, 95 S.W.3d 656, 659 (Tex.App–Dallas 2002, no pet.). "The test for an abuse of discretion review is not whether, in the opinion of the reviewing court, the facts present an appropriate case for the trial court's action, but 'whether the court acted without reference to any guiding rules and principles.'" *Cire*, 134 S.W.3d at 839 (citing *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241-42 (Tex.1985)). The trial judge's ruling will be reversed only if it was arbitrary or unreasonable. *Id.*

## Discussion

### *The Rule 215 Sanctions Served a Purpose*

 Only one of Bonnie's eight issues challenges the sanctions under Tex.R. Civ. P. 215.[2] In this issue, Bonnie argues that her nonsuit rendered the request for sanctions moot. According to Bonnie, once the nonsuit was filed, sanctions no longer served the purpose of assuring a fair trial. Although the nonsuit may have obviated any fair trial concerns, we cannot agree that Rule 215 sanctions were no longer appropriate.

 A nonsuit renders the merits of the case moot. But Tex.R. Civ. P. 162 expressly provides that a nonsuit does not affect the trial court's authority to act on a motion for sanctions pending at the time of dismissal. *See* Tex.R. Civ. P. 162; *Miller v. Armogida*, 877 S.W.2d 361, 364 (Tex. App–Houston [1st Dist.] 1994, writ denied). Claims for costs and attorney's fees also survive. Tex.R. Civ. P. 162; *Klein v. Dooley*, 949 S.W.2d 307, 308 (Tex.1997). A trial court may also act under a post-dismissal sanctions motion as long as it acts before the expiration of its plenary power. *See Scott & White Memorial Hosp. v. Schexnider*, 940 S.W.2d 594, 596 (Tex.1996); *Jobe v. Lapidus*, 874 S.W.2d 764, 766–68 (Tex.App.-Dallas 1994, writ denied).

The motion for sanctions pending at the time of nonsuit requested that Bonnie be prohibited from introducing any evidence of alleged damages or the factual basis of her claims. These sanctions would have been case determinative, and therefore constitute death penalty sanctions. *See*

*Chrysler Corp. v. Blackmon*, 841 S.W.2d 844, 845 (Tex.1992) (death penalty sanction is any sanction that adjudicates a claim and precludes the presentation of the merits of the case); *GTE Communications Sys. Corp. v. Tanner*, 856 S.W.2d 725, 732 (Tex.1993) (any sanctions which are "case determinative" may constitute death penalty sanctions). Because the motion requesting death penalty sanctions was pending at the time of nonsuit, the nonsuit did not affect the motion. *See* Tex.R. Civ. P. 162.

 The fact that the merits of the case were extinguished by the nonsuit does not necessarily mean that there was no longer a basis to impose sanctions. Sanctions serve a variety of purposes, including the compensation of a party for past prejudice or punishment and deterrence of bad faith conduct. *See Aetna Casualty & Surety Co. v. Specia*, 849 S.W.2d 805, 807 n. 4 (Tex.1993). After a careful review of the record, including the trial court's detailed findings of fact and conclusions of law, we cannot conclude that the sanctions served no purpose.

 The trial court found that Bonnie abused the discovery process and demonstrated flagrant bad faith and callous disregard for the discovery rules. Although findings of fact and conclusions of law filed in conjunction with a sanction may be "helpful", they do not carry the same weight on appeal as findings made under Tex.R. Civ. P. 296, and are not binding on an appellate court reviewing the trial court's exercise of discretion. *See Chrysler Corp. v. Blackmon*, 841 S.W.2d 844, 852 (Tex.1992) (orig. proceeding) (findings

---

**2.** The trial court's conclusions of law are partially segregated according to the rule or statute to which they pertain. When these findings are specifically made pursuant to rule 215, we are confined to determining whether the sanction was appropriate under that rule.

*See American Flood Research Inc., v. Jones*, 192 S.W.3d 581, 583–84 (Tex.2006). Moreover, the issues Bonnie asserts on appeal are segregated according to the rule or statute under which the sanction was imposed.

helpful in determining abuse of discretion); *IKB Indus., Ltd., v. Pro-Line Corp.*, 938 S.W.2d 440, 442 (Tex.1997) (order on discovery sanctions may be reversed for abuse of discretion even when findings are made). Here, the trial court's findings are fully supported by the record. Even under the threat of sanctions, Bonnie refused to respond to Chesnutt's discovery. Instead, the court found that Bonnie actively frustrated Chesnutt's efforts to define the claims and damages and investigate potential defenses. Despite the numerous hearings, Bonnie offered no reasonable explanation for the failure to respond to Chesnutt's discovery. The request for disclosures was never answered. The response to Chesnutt's interrogatories simply mirrored the allegations of the petition and asserted blanket objections. The response to the interrogatories was verified by Bonnie, a bankruptcy attorney with twenty years experience. When Bonnie testified, she admitted she did not "endeavor to set out her position as best as she was able" when preparing her answers to interrogatories. The testimony of one of Bonnie's former counsel established that the responses to Chesnutt's interrogatories were simply excerpts from a treatise generally discussing the law of trusts. There were no case-specific facts explaining why these general principles might have some application to the case that was filed. The trial court found that Bonnie nonsuited the case to avoid a hearing on a third motion to compel. The court further found that the sanctions were within its power to award to assure compliance with discovery and to deter those who might be tempted to abuse discovery in the absence of a deterrent. On the record before us, the trial court's determination that there was good cause for sanctions was neither arbitrary nor unreasonable.

*The Rule 215 Sanctions Were Just*

Although the choice of sanctions is left to the discretion of the trial judge, the sanctions imposed must be just. *See* TEX.R. CIV. P. 215; *TransAmerican Natural Gas Corp. v. Powell,* 811 S.W.2d 913, 917 (Tex.1996); *Tidrow v. Roth,* 189 S.W.3d 408, 412 (Tex.App.-Dallas 2006, no pet.). A sanction must meet two requirements before it can be considered just. First, there must be a direct relationship between the offensive conduct and the sanction imposed. *TransAmerican Natural Gas Corp.,* 811 S.W.2d at 917. Second, the sanction imposed must not be excessive. *Id.* Before imposing a death penalty sanction, a trial judge must first consider the availability of lesser sanctions, and whether a lesser sanction would be adequate to secure compliance. *See Response Time, Inc.,* 95 S.W.3d at 660. Case determinative sanctions are also limited by due process concerns. Such sanctions should only be imposed in "exceptional cases" where they are "clearly justified" and it is "fully apparent that no lesser sanction would promote compliance with the rules." *See Cire,* 134 S.W.3d at 840–41. An exceptional case exists when a party's hindrance of the discovery process justifies a presumption that her claims lack merit. *Id.* at 841; *TransAmerican Natural Gas Corp.,* 811 S.W.2d at 918.

The court found that Bonnie's hindrance of the discovery process was so persistent and so successful as to warrant the presumption that her claims had no merit; otherwise Bonnie would have fully responded to discovery rather than face case determinative sanctions. The court also found that there was no evidence of any factual basis for the lawsuit. These findings are supported by the record. During the discovery process, Bonnie had multiple opportunities to set forth the factual and

legal basis for the lawsuit and a calculation of the damages claimed, but failed to do so. Although the exculpatory language of the trust clearly exonerates the trustee for discretionary activities unless there is fraud or bad faith, Bonnie admitted under oath that she has no claim for fraud or bad faith. When the court requested post-hearing briefing on whether the delegation of investment decision-making was a breach of fiduciary duty, Bonnie still failed to articulate a colorable basis for her claim. The court also found and the record reflects that no damages calculation was done before or after the filing of the lawsuit.

The record demonstrates the requisite relationship between the offensive conduct and the sanction imposed. Bonnie attempted to assign the blame for the dilatory conduct on the alleged incompetence of counsel. But the court specifically found that Bonnie was more than just a mere bystander in the proceedings: she is a competent attorney who took an active role in the litigation. The court further found that Bonnie was the only common thread among all of the attorneys she employed.

When asked about the failure to depose Chesnutt or designate an expert, one of Bonnie's former counsel testified that Bonnie failed to provide the information, authorization, and funding. According to the trial court, the failure to respond to discovery was not the only evidence of callous disregard that Bonnie exhibited toward the court and her responsibilities as a litigant.

The findings of fact and conclusions of law reflect that the court considered lesser sanctions, but found that alternatives were neither available nor effective in promoting compliance with the rules. As the court observed, the filing of the nonsuit effectively mooted many of the other sanctions that were available. Bonnie admitted that the nonsuit was a tactical effort to avoid the penalties likely to result from her failure to comply with her discovery obligations. The court concluded that the case was exceptional and because the claims had no merit, justice would not be served by allowing Bonnie an opportunity to litigate the case anew. These findings are fully supported by the record. Under the circumstances presented in this case, we conclude that the award of sanctions under Tex.R. Civ. P. 215 was not an abuse of discretion and the sanctions imposed were just.

Because we conclude that the dismissal with prejudice and award of costs and attorney's fees was an appropriate sanction under Tex.R. Civ. P. 215, we need not reach appellant's remaining issues challenging the award under Tex.R. Civ. P. 13 and Chapter 10 of the Civil Practices and Remedies Code. The judgment of the trial court is affirmed.