COURT
OF APPEALS

                                         SECOND
DISTRICT OF TEXAS

                                                     FORT
WORTH

 

 

                                           NO.
2-07-244-CV

 

 

KIMBERLY NORWOOD A/K/A                                              APPELLANTS

KIMBERLY
ELLIOTT AND

EXECUTIVE CATERING, INC.                                                                  

 

                                                      V.

 

TRACY NORWOOD AND                                                        APPELLEES

NOR
DUBOIS, INC.

 

                                                  ------------

 

              FROM
THE 393RD DISTRICT COURT OF DENTON COUNTY

 

                                                  ------------

 

                                  MEMORANDUM
OPINION[1]

 

                                                  ------------








This appeal involves a
divorce that included litigation between not only the husband and wife but also
a closely-held corporation owned solely by the husband and wife and a competing
corporation for which the wife went to work after the divorce proceedings
began.  In a single issue consisting of
three distinct complaints or subissues, appellant Kimberly Norwood a/k/a
Kimberly Elliott[2]
challenges the trial court=s granting of appellees Tracy Norwood and Nor Dubois, Inc.=s motion for sanctions and the entry of a directed verdict in Nor
Dubois=s favor on its claims for breach of fiduciary duty, conspiracy to
breach fiduciary duty, and tortious interference with contracts.  We affirm.

Factual and Procedural
Background

Before marrying, Tracy and
Kimberly formed Nor Dubois in March 2001 as a closely-held corporation for the
purpose of operating a catering business for corporate aircraft.  Tracy owned sixty percent of the shares of
Nor Dubois and Kimberly owned forty percent. 
Each was an officer, director, and employee.  The couple married in February 2002.  








Tracy filed for divorce in
June 2004.  Although the couple continued
to operate Nor Dubois=s business,
they began negotiating with third parties to sell the business during the
summer and fall of 2004; Kimberly was involved in the negotiation process and
remained as an employee throughout 2004. 
She filed a counterpetition for divorce in September 2004.  The trial court entered an Agreed Mutual
Injunction later that month, which included a provision prohibiting the parties
from Aharming or reducing the value of the property of one or both of the
parties.@ 

According to Tracy, on
January 14, 2005, he was in a hangar near the offices of Catering Art, a Nor
Dubois competitor with whom Kimberly had previously talked Aabout some sort of a business arrangement.@  He saw Nor Dubois Avehicles pull up in front . . . and start unloading everything from
products, lobster tail, packaging, coffee makers, . . . [and] everything that=s in a catering kitchen from A to Z.@  When he went inside the
building, he saw a room full of similar items, and one of the drivers told him Athey had been doing this for three days.@  He called the police and had
the activity stopped.  

On January 19, 2005, Kimberly
resigned as a Nor Dubois director and employee. 
In her resignation letter, she said that Tracy asked her not to come back
to work on January 14 and refused her admittance to Nor Dubois=s offices.  Kimberly went to
work for Executive Catering,[3]
a business she incorporated with Tony Caterine, who also owned Catering
Art.  








On January 31, 2005, Tracy
moved to enforce the parties= agreed injunction by contempt based on the January 14 incident.  Tracy alleged that Kimberly had interfered
with the contractual and business relations between Nor Dubois and its
employees and customers.  He further
alleged that she had made harassing phone calls to his cell phone and changed
the passwords on his private email accounts without authorization, making those
accounts temporarily unavailable to him. 
Kimberly responded with her own motion for enforcement by contempt,
alleging that Tracy had withdrawn $2,500 from an account of Aircraft
Outfitters, a business owned solely by Kimberly, and had removed kitchen
equipment and other assets belonging to Nor Dubois.  The record does not show whether the trial
court ruled on these motions.

On March 18, 2005, Kimberly
brought a motion to compel discovery and for sanctions, asking the court to
order Tracy to respond to requests for production and disclosure that she had
served on him in November 2004.  Tracy
then filed his own motion to compel and for sanctions on March 21, 2005, asking
the trial court to order Kimberly to respond to requests for production and
disclosure that he had likewise propounded in November 2004.  The record does not show whether the trial
court ruled on these initial discovery-related motions.








In February 2006, Tracy=s lawyer filed a subpoena to compel production of numerous documents
related to Executive Catering.  Tracy
then filed another motion for sanctions, complaining of Kimberly=s failure to produce documents in response to a second set of requests
for production and her failure to appear for a deposition.  He also filed a motion to compel production
of documents from Executive Catering, which had responded to the subpoena with
objections and responses but no documents. 
After a hearing on March 21, 2006, the trial court sustained Tracy=s motions and ordered the following: 
that Executive Catering produce the documents described in the motion to
compel; that Kimberly appear for a deposition no later than April 11, 2006; and
that Kimberly pay Tracy=s attorney
sanctions of $500.  

Nor Dubois filed a petition
in intervention on April 12, 2006.  In
the petition, Nor Dubois alleged (1) that Kimberly misappropriated tangible
personal property from Nor Dubois and transferred it to Executive Catering, (2)
that Kimberly breached a fiduciary duty to Nor Dubois and tortiously interfered
with actual or prospective contracts between Nor Dubois and its customers to
persuade them to transfer their business to Executive Catering, and (3) that
Executive Catering is the alter ego of Tony and Linda Caterine, both directors
of Executive Catering along with Kimberly. 
It named Executive Catering as a defendant, in addition to Kimberly.








Tracy filed a second motion
for sanctions on May 4, 2006, contending that Kimberly had failed to pay the
$500 as previously ordered in March.  He
also stated that the case was ready for mediation but only if the trial court
ordered one of the Caterines to attend. 
Although the record shows that the trial court set the motion for a
hearing on June 6, 2006, it does not show whether the trial court ruled on the
motion.  

Tracy filed a third motion to
compel on January 19, 2007, alleging that at Kimberly=s deposition, she Arefused to provide an address or a phone number for Tony Caterine and
gave vague, if not inconsistent, testimony about his residence address.@  Kimberly had previously
responded to a request for disclosure and an interrogatory with Tony=s business address only; according to Tracy, attempts to serve Tony at
that address were unsuccessful.  Tracy
also alleged that he asked Kimberly=s counsel again for the information, but he refused.  The trial court ordered Executive Catering to
provide all residence addresses and phone numbers for Tony and imposed
discovery sanctions of $1,500 on Executive Catering, payable to Tracy=s counsel.  








Appellees joined in a motion
for sanctions filed February 22, 2007, six days before trial.  In it, they alleged that Kimberly=s November 8, 2006 responses to September 27, 2006 requests for
disclosure and interrogatories were deficient. 
Specifically, appellees claimed that the responses (a) were not timely,
(b) failed to state any legal theories or the factual bases for Kimberly=s claims or defenses, and (c) failed to provide a brief statement of
each identified person=s connection
with the case.  They further claimed that
they had notified Kimberly=s counsel of the deficiencies, but he had failed to respond.  A review of Kimberly=s responses shows that she identified a list of around thirty persons
with Apersonal knowledge of the relationship@ but failed to include a brief statement about each of those witnesses= connection with the case.  She
also failed completely to answer the questions regarding the legal theories and
factual bases of her claims or defenses and the amount and method of
calculating economic damages.  Appellees
asked the trial court to prohibit Kimberly from calling any witnesses at trial
on Nor Dubois=s claims and
from offering evidence of any defenses. 
They also noted that Executive Catering had failed to pay the $1500
sanctions and asked for additional monetary sanctions.[4]









The trial court heard
argument on the sanctions motion before beginning a bench trial on February 28,
2007[5]
and decided that the motion should be granted. 
Accordingly, the trial court prohibited appellants from calling any
witnesses at trial on, or offering evidence of any defenses to, Nor Dubois=s breach of fiduciary duty, conspiracy, and tortious interference
claims.  After appellees rested, the
trial court granted Nor Dubois a directed verdict A[o]n all the issues contained in . . . the amended [petition in]
intervention.@  

On April 10, 2007, the trial
court signed a decree granting the divorce and dividing the marital
estate.  The decree also ordered
appellants, jointly and severally, to pay Nor Dubois damages of $235,000.  The trial court did not specify which of Nor
Dubois=s claims supported the damage award. 
Appellants filed a motion for new trial, alleging that the sanctions
imposed by the trial court were excessive, that the directed verdict was
improper, and that there is no evidence supporting an award of damages to Nor
Dubois, the same complaints Kimberly raises on appeal.  The motion was overruled by operation of law.

Issue on Appeal

Kimberly
claims that the directed verdict in Nor Dubois=s favor was improper because the trial court=s sanctions order prohibiting appellants from offering witnesses and
evidence in defense of Nor Dubois=s claims, upon which the directed verdict was based, was improper; and
even if the sanctions order was proper, Nor Dubois=s evidence was legally insufficient to support the trial court=s judgment in Nor Dubois=s favor on both liability and damages.








Standards of Review

An appellate
court reviews a trial court=s ruling on a motion for sanctions for an abuse of discretion.  Cire v. Cummings, 134 S.W.3d 835, 838
(Tex. 2004); Richmond Condominiums v. Skipworth Commercial Plumbing, Inc.,
245 S.W.3d 646, 660 (Tex. App.CFort Worth 2008, pet. denied); VingCard A.S. v. Merrimac
Hospitality Sys., 59 S.W.3d 847, 855 (Tex. App.CFort Worth 2001, pet. denied). 
The abuse of discretion standard requires us to determine whether the
trial court acted without reference to any guiding rules or principles; in
other words, whether the act was arbitrary and unreasonable.  Downer v. Aquamarine Operators, Inc.,
701 S.W.2d 238, 241B42 (Tex.
1985), cert. denied, 476 U.S. 1159 (1986).  Merely because an appellate court would in a
similar circumstance decide the matter differently does not demonstrate that an
abuse of discretion has occurred.  Id.








A directed verdict is proper
only under limited circumstances: (1) when the evidence conclusively
establishes the right of the movant to judgment or negates the right of the
opponent or (2) when the evidence is insufficient to raise a material fact
issue.  See Prudential Ins. Co. v.
Fin. Review Servs., Inc., 29 S.W.3d 74, 77 (Tex. 2000); Ray v.
McFarland, 97 S.W.3d 728, 730 (Tex. App.CFort Worth 2003, no pet.).  In
reviewing a directed verdict, we must credit favorable evidence if reasonable
jurors could and disregard contrary evidence unless reasonable jurors could
not.  See City of Keller v. Wilson,
168 S.W.3d 802, 827 (Tex. 2005).

We may sustain a legal
sufficiency challenge only when (1) the record discloses a complete absence of
evidence of a vital fact; (2) the court is barred by rules of law or of
evidence from giving weight to the only evidence offered to prove a vital fact;
(3) the evidence offered to prove a vital fact is no more than a mere
scintilla; or (4) the evidence establishes conclusively the opposite of a vital
fact.  Uniroyal Goodrich Tire Co. v.
Martinez, 977 S.W.2d 328, 334 (Tex. 1998), cert. denied, 526 U.S.
1040 (1999); Robert W. Calvert, "No Evidence" and
"Insufficient Evidence" Points of Error, 38 Tex. L. Rev. 361, 362B63 (1960).  In determining
whether there is legally sufficient evidence to support the finding under
review, we must consider evidence favorable to the finding if a reasonable
factfinder could and disregard evidence contrary to the finding unless a
reasonable factfinder could not.  City
of Keller, 168 S.W.3d at 827.

Propriety of Sanctions Order








Texas Rule of Civil Procedure
215.2 allows a trial court to sanction a party for failure to comply with a
discovery order or request and lists the sanctions a court may impose.  Tex. R. Civ. P. 215.2; Cire, 134
S.W.3d at 839.  These sanctions include
refusing to allow the disobedient party to support or oppose designated claims
or defenses or prohibiting designated evidence from being introduced into
evidence.  Tex. R. Civ. P. 215.2(b)(4); Cire,
134 S.W.3d at 839; see also Tex. R. Civ. P. 193.6(a) (providing that
party who fails to make, amend, or supplement discovery response in timely
manner may not introduce the untimely disclosed material into evidence and may
not offer the testimony of an untimely identified witness unless the trial
court finds good cause or absence of unfair surprise or prejudice).








A trial court=s ability to sanction is limited by the requirement that the sanctions
be just.  See Tex. R. Civ. P.
215.2(b); Cire, 134 S.W.3d at 839; Fethkenher v. Kroger Co., 139
S.W.3d 24, 35 (Tex. App.CFort Worth
2004, no pet.).  To determine whether
discovery sanctions are just, we engage in a two-part inquiry.  Am. Flood Research, Inc. v. Jones, 192
S.W.3d 581, 583 (Tex. 2006); Fethkenher, 139 S.W.3d at 35.  First, a direct relationship must exist
between the complained-of conduct and the sanctions imposed; in other words,
just sanctions must be directed against the abuse and toward remedying the
prejudice caused the innocent party.  Am.
Flood Research, 192 S.W.3d at 583; Cire, 134 S.W.3d at 839; Fethkenher,
139 S.W.3d at 35.  Second, the sanctions
must not be excessive; in other words, A[t]he punishment should fit the crime,@ and the trial court must consider the availability of less stringent
sanctions and whether any available lesser sanctions would fully promote
compliance.  Am. Flood Research,
192 S.W.3d at 583; Cire, 134 S.W.3d at 839; Fethkenher, 139
S.W.3d at 35.  A trial court may not
impose a sanction that is more severe than necessary to satisfy its legitimate
purpose.  Cire, 134 S.W.3d at 839;
Hamill v. Level, 917 S.W.2d 15, 16 (Tex. 1996).  In considering whether sanctions are just, we
review the entire record, including the evidence, arguments of counsel, written
discovery on file, and the circumstances surrounding the parties' discovery
abuse.  Fethkenher, 139 S.W.3d at
35; Daniel v. Kelley Oil Corp., 981 S.W.2d 230, 234 (Tex. App.CHouston [1st Dist.] 1998, pet. denied) (op. on reh=g).

Death penalty, or
case-determinative sanctions, should be imposed only in exceptional
circumstances in which they are clearly justified and it is fully apparent that
no lesser sanction would promote compliance with the rules.  Cire, 134 S.W.3d at 840B41; Johnson ex rel. Johnson v. Chesnutt, 225 S.W.3d 737, 743
(Tex. App.CDallas 2007,
pet. denied).  An exceptional case exists
when a party=s hindrance
of the discovery process justifies a presumption that its claims lack
merit.  Cire, 134 S.W.3d at 841; Johnson,
225 S.W.3d at 743.








Applicable Facts

Appellees
served interrogatories and requests for disclosure on appellants in late
September 2006, to which each responded on November 8, 2006.  Neither Kimberly nor Executive Catering
responded to the question asking for Athe legal theories and, in general, the factual bases of the
responding party=s claims or
defenses.@  In addition, each responded to a question
inquiring about Athe name,
address, and telephone number of persons having knowledge of relevant facts,
and a brief statement of each identified person=s connection with the case,@ with a list of the same thirty persons= names, addresses, and some phone numbers and the summary, AAll of the above witnesses have personal knowledge of the
relationship.@  

Appellees= counsel sent appellants= counsel a letter on December 11, 2006, noting that appellants had
failed to state any legal theories or factual bases for their claims or
defenses and that the summary provided about the witnesses= knowledge of the case was Aso vague and overbroad that it is virtually meaningless.@  Accordingly, counsel asked
appellants to correct the problems and send amended responses before December
27, 2006.  Because appellants did not do
so, counsel filed the motion for sanctions in February one week before trial.








At the sanctions hearing,
which the trial court held immediately before trial began, appellants did not
offer any explanation as to why they had failed to answer the question
regarding claims and defenses other than to say that Kimberly=s defense to the divorce was self-evident because she had filed a
counter-petition for divorce.  As to the
production of the names and addresses of thirty witnesses who Ahad personal knowledge of the relationship between the parties,@ Kimberly=s counsel
argued that appellants were going to call only two witnesses:  Athe two women that were involved and aware and worked with and around
both people involved.@  Counsel stated,  AWe don=t have
nothing more.  We=re not talking about corporations of individuals.  We=re talking about the relationship between the parties, the parties
being@ Tracy and Kimberly.  He also
explained that Executive Catering was late paying the $1500 due to a
communication problem.  As to Kimberly=s counterpetition for divorce, counsel stated that A[t]he defensive posture . . . is they both want a divorce, they both
complain of the action and that=s self-apparent by the file that you have before you.@  








Counsel for Executive
Catering argued that the discovery answers were merely incomplete and that the
trial court could not exclude evidence, witnesses, or both unless it found
unfair surprise or prejudice.  According
to counsel, A[t]here is
nothing in the responses that is new. 
There is nothing that they aren=t already aware of.@

Appellees= counsel responded that appellants= discovery answers were still insufficient because there were two
corporations involved in the case as well as Tracy and Kimberly and that
Kimberly=s relationship with Executive Catering was not related just to the
divorce but also to Nor Dubois=s claims of breach of fiduciary duty and tortious interference.  Thus, he still could not tell if appellants
had defenses, or were going to call witnesses with respect to, Nor Dubois=s claims in intervention.  He
also stated that he had not been provided with a witness or exhibit list as
required by the local rules for Denton County. 

In its order granting
appellees= motion and
prohibiting appellants from calling any witnesses at trial or from offering any
evidence of defenses to Nor Dubois=s claims, the trial court noted that it had taken judicial notice of
the file in the case, Aspecifically,
the prior orders of sanctions imposed on . . .
Kimberly . . . and . . . Executive Catering.@[6]  

Analysis








Kimberly claims that the
trial court abused its discretion by imposing sanctions prohibiting her from
calling any witnesses or offering any evidence at trial on Nor Dubois=s claims.  Kimberly initially
complains that appellees waived their right to seek sanctions by filing their
motion too late.  She also points out
that the motion for sanctions was the first motion related to this particular
set of discovery.

Only a failure to obtain a
ruling before trial actually begins will waive the right to complain about the
failure to answer discovery.  Remington
Arms Co. v. Caldwell, 850 S.W.2d 167, 170 (Tex. 1993); Trahan v. Lone
Star Title Co. of El Paso, Inc., 247 S.W.3d 269, 282B83 (Tex. App.CEl Paso
2007, pet. denied); Adkins Servs., Inc. v. Tisdale Co., 56 S.W.3d 842,
844B45 (Tex. App.CTexarkana
2001, no pet.).  Likewise, rule 215.2
specifically contemplates that a motion to compel need not be filed before a
motion for sanctions.  Tex. R. Civ. P.
215.2(b); Adkins, 56 S.W.3d at 844. 
Thus, we conclude and hold that appellees did not waive their right to
sanctions.













Kimberly also claims that the
sanctions were excessive.[7]   The trial court indicated in its order that
it had taken judicial notice of the file, specifically the prior sanctions
orders, and it was aware of the past discovery abuses for which it had
sanctioned appellants.  Specifically, the
record shows a pattern of Kimberly=s recalcitrance in providing information about Executive Catering (a
corporation for which she served as an initial director) and Tony Caterine, in
addition to a pattern of both Kimberly and Executive Catering paying monetary
sanctions imposed by the trial court only after Tracy and Nor Dubois had filed
additional sanctions motions.  Neither
counsel for Kimberly nor counsel for Executive Catering told the trial court
that appellants would be asserting any defenses to Nor Dubois=s claims at the sanctions hearing; Kimberly=s counsel told the trial court only that, as to the divorce, Kimberly
wanted one as well as Tracy.  Out of
thirty potential witnesses identified in the discovery, Kimberly=s counsel stated that he planned to call only two, but he never
explained specifically what he thought those two would testify to other than
Tracy and Kimberly=s Arelationship.@  Additionally, even though Kimberly and
Executive Catering both failed to respond in any way to the discovery asking
about the legal theories and factual bases of any claims or defenses, they
continued to maintain to the trial court that they had only provided incomplete
answers to the discovery.  Thus, in
addition to considering their past behavior hindering discovery, the trial
court could have also concluded that lesser sanctions would not have been
adequate based on appellants= refusal to acknowledge that they had failed to adequately answer the
discovery.[8]  Based on the foregoing, we conclude and hold
that the sanctions were not excessive and that the trial court did not abuse
its discretion by imposing sanctions under rule 215.2(b).  See Tex. R. Civ. P. 215.2(b); Cire,
134 S.W.3d at 840; Johnson, 225 S.W.3d at 743B44; Jackson, 2006 WL 3438703, at *9; see also Tex. R.
Civ. P. 193.6.








Sufficiency of the Evidence








Kimberly
also challenges the legal sufficiency of the evidence to support the $235,000
damage award under either a breach of fiduciary duty or tortious interference
theory.[9]

Breach of Fiduciary Duty








The elements of a breach of
fiduciary duty claim are as follows:  (1)
the existence of a fiduciary relationship between the plaintiff and defendant;
(2) defendant=s breach of
the duty imposed by the relationship; and (3) a resulting injury to the
plaintiff or benefit to the defendant.  See
Jones v. Blume, 196 S.W.3d 440, 447 (Tex. App.CDallas 2006, pet. denied); Punts v. Wilson, 137 S.W.3d 889, 891
(Tex. App.CTexarkana
2004, no pet.).  Based on Tracy=s testimony that Nor Dubois obtained its prospective customers from a
list compiled by the National Business Aviation Association that is available
to all members of the Association, Kimberly contends that there is no evidence
of breach because she did not improperly use or share with Executive Catering
any confidential or proprietary information.[10]  Nor Dubois claimed that Kimberly took not
only its personal property with her to Executive Catering but also its pricing
structure, menu, chef, and customer list. 


A former employee may use the
general knowledge, skills, and experience acquired in an employment
relationship, even when competing with a former employer.  Sands v. Estate of Buys, 160 S.W.3d
684, 687 (Tex. App.CFort Worth
2005, no pet.); Am. Derringer Corp. v. Bond, 924 S.W.2d 773, 777 (Tex.
App.CWaco 1996, no writ).  But a
former employee may not use confidential or proprietary information or trade
secrets the employee learned in the course of employment for the employee=s own advantage and to the detriment of the employer.  Fox v. Tropical Warehouses, Inc., 121
S.W.3d 853, 858 (Tex. App.CFort Worth 2003, no pet.); Rugen v. Interactive Bus. Sys., Inc.,
864 S.W.2d 548, 551 (Tex. App.CDallas 1993, no writ).   To
warrant protection, the information must have a substantial element of secrecy
and give the employer a competitive advantage. 
Tom James of Dallas, Inc. v. Cobb, 109 S.W.3d 877, 888 (Tex. App.CDallas 2003, no pet.); Rugen, 864 S.W.2d at 552.  Secrecy implies the information is not
generally known or readily ascertainable. 
Tom James of Dallas, 109 S.W.3d at 888.








Tracy testified that when Nor
Dubois began doing business, he went to potential customers individually,
including those for whom he had performed maintenance work, brought them
samples, and held marketing parties.  As
the business grew, Nor Dubois took advice from its customers as to its services.  The customer list was password protected and
kept in a QuickBooks database; Tracy claimed that before Kimberly resigned, she
changed the password so that he could not access the list, among other items.  Additionally, the evidence shows that one of
the offers to purchase Nor Dubois specifically set the purchase price for the
customer list at $100,000, and the other included Acurrent and future client base@ as part of the business assets to be purchased for $225,000.  According to Tracy, Executive Catering=s client list included sixty of Nor Dubois=s former customers.  

On cross-examination, Tracy
testified that Nor Dubois and its four competitors in the Dallas area were
trying to reach at least one hundred customers with about $5 million in
sales.  When asked whether a list of
these potential customers exists, Tracy answered that a member of the National
Business Aviation Association can obtain the list.  However, Tracy made it clear that this list
is a Atarget@ list and
was not Nor Dubois=s client
list.  








We conclude and hold that
there is legally sufficient evidence to show that Kimberly and Executive
Catering used proprietary information belonging to Nor Dubois.  The evidence shows that Nor Dubois developed
its own client list, that it was kept in a password-protected database
available to Tracy, Kim, and the office manager, and that at least two
companies had specifically assigned a part of the purchase price offered to Nor
Dubois to obtaining its client list. 
Accordingly, we address Kimberly=s next complaint that there is no evidence to support the damage award
to Nor Dubois.

Kimberly contends that the
damage award is not supported by legally sufficient evidence because it is
based solely on the diminution in value of Nor Dubois as a result of appellants= actions.  According to
Kimberly, a plaintiff may recover only out-of-pocket losses or lost profits for
a breach of fiduciary duty.  She cites
Texas Instruments Inc. v. Teletron Energy Mgmt., 877 S.W.2d 276 (Tex.
1994), and Duncan v. Lichtenberger, 671 S.W.2d 948 (Tex. App.CFort Worth 1984, writ ref=d n.r.e.), to support her argument. 
But these cases do not stand for the proposition that these measures of
damages are the exclusive remedies for breach of fiduciary duty.








In Texas Instruments,
the issue was whether the plaintiff proved lost profits stemming from breach of
express warranties and DTPA violations with the required level of reasonable
certainty.  877 S.W.2d at 277B80.  And in Duncan, this
court held that the evidence was sufficient to support an out-of-pocket expense
damage award for breach of fiduciary duty 
as Athe remedy
chosen by the appellees@ in that
case.  671 S.W.2d at 953.  This court supported its conclusion in part
on the jury=s finding
that the appellant=s breach was
a proximate cause of damage to the appellees. 
Id.  Nothing in either of
these cases restricts the types of damages that can be awarded on a breach of
fiduciary duty claim.  See Horton
v. Robinson, 776 S.W.2d 260, 266 (Tex. App.CEl Paso 1989, no pet.) (reviewing propriety of damage award for breach
of fiduciary duty and civil conspiracy and noting that A[w]here the law furnishes no legal measure of damages and they are
unliquidated, the amount to be awarded rests largely in the discretion of the
jury.@); cf. Swank v. Sverdlin, 121 S.W.3d 785, 797B98 (Tex. App.CHouston [1st
Dist.] 2003, pet. denied) (holding that damages model based on diminution in
value of corporation as a result of breach of fiduciary duty was based on sound
calculation but reversing because no evidence supported jury=s award splitting total diminution in value into four parts and
attributing one quarter of the total to each tortfeasor), cert. denied,
544 U.S. 1033 (2005).








Here, Tracy testified that
after Kimberly left Nor DuboisCtaking customers, supplies, and all of the employees, including the
chef, with herChe was
unable to continue operating the business on his own.[11]  Although he was able to sell the remaining
equipment for $60,000 about a month after she left, he had to use that money to
pay off the company=s
debts.  A certified public accountant,
John Graves, testified that Nor Dubois was worth $236,773 as of December 31,
2004 but $0 after Kimberly resigned in January 2005.  A report he drafted, which was entered into
evidence, noted that, A[i]n
summary, [he] would value the business at $235,000, allowing for small
fluctuations.@  We hold that this evidence is sufficient to
support the $235,000 damage award to Nor Dubois.[12]  See Goodin v. Joliff, 257 S.W.3d 341,
346 (Tex. App.CFort Worth
2008, no pet.).

Because we conclude that none
of Kimberly=s subissues
have merit, we overrule her sole issue on appeal.

 

 

Conclusion








Having determined that the
trial court did not err by imposing sanctions against appellants and that the
damage award to Nor Dubois is supported by the evidence, we overrule Kimberly=s sole issue and affirm the trial court=s judgment.

 

 

TERRIE LIVINGSTON

JUSTICE

 

PANEL: 
LIVINGSTON, WALKER, and MCCOY, JJ.

DELIVERED: November 13, 2008











[1]See Tex.
R. App. P. 47.4.





[2]Although
the notice of appeal was filed on behalf of both Kimberly and Executive
Catering, Inc. and both were listed as parties on the docket sheet, Executive
Catering is not listed as a party in the only appellant=s
brief, which does not request any relief on behalf of Executive Catering.  We also note that appellees elected not to
file a brief.





[3]The
evidence at trial showed that Executive Catering had been incorporated on
January 12, 2005, with Kimberly listed as a director.





[4]Executive
Catering paid these sanctions on the afternoon of February 22, 2007, after
appellees had filed their motion.  





[5]On
the back page of the motion is a ANotice of Hearing@
stating that the motion was set for hearing Ajust prior to the inception
of trial of this cause.@  





[6]These
prior orders are (i) the March 21, 2006 order compelling Executive Catering to
produce documents, ordering Kimberly to attend a deposition, and ordering
Kimberly to pay Tracy=s
attorney $500 and (ii) the January 30, 2007 order compelling Executive Catering
to produce Tony Caterine=s
address and telephone number and ordering Executive Catering to pay Nor Dubois=s
counsel $1500.





[7]An
order prohibiting a party from presenting evidence on, or calling witnesses as
to, claims or defenses for which the party failed to answer or supplement
discovery is limited to the direct consequences of the offensive conduct; thus,
the first TransAmerican prong is satisifed.  Jackson v. Jackson, No.
01-05-00194-CV, 2006 WL 3438703, at *9 (Tex. App.CHouston
[1st Dist.] Nov. 30, 2006, no pet.) (mem. op.).





[8]Included
in Kimberly=s
complaint about the sanctions is the allegation that she did nothing wrong and
that the trial court improperly imputed Executive Catering=s
discovery abuses to her.  However, our
review of the record shows that the sanctioned behavior was not attributable
solely to Executive Catering.  Moreover,
Kimberly was not only an employee of Executive Catering but also a director.





[9]Kimberly=s
brief appears to contain a challenge to the award of damages based on
conspiracy to breach fiduciary duty; however, this complaint was not preserved
because it is inadequately briefed.  See
Tex. R. App. P. 38.1; McClure v. Denham, 162 S.W.3d 346, 349 (Tex. App.CFort
Worth 2005, no pet.).





[10]Kimberly
also states in the ASummary
of the Argument@ part
of her brief that Athere
is some question if [she] owed a fiduciary duty to Nor Dubois at all.@  But she failed to brief this challenge; thus,
it is waived.  See Tex. R. App. P.
38.1; McClure, 162 S.W.3d at 349.





[11]He
could not access the Nor Dubois client list and supplier list for three days
after Kimberly left because the password to the computer on which these were
stored had been changed.





[12]Because
we have determined that the award is supportable based on Nor Dubois=s
claims alleging Kimberly=s
breach of fiduciary duty, we need not address her complaint regarding whether
the award is supportable based on Nor Dubois=s claim for tortious
interference.  See Tex. R. App. P.
47.1; Horsley-Layman v. Adventist Health Sys./Sunbelt, Inc., 221 S.W.3d
802, 809 (Tex. App.CFort
Worth 2007, pet. denied).