Dorothy **FETHKENHER**, Appellant,

v.

The **KROGER CO.**, Appellee.

No. 2–02–450–CV.

Court of Appeals of Texas,
Fort Worth.

June 3, 2004.

Maher Law Firm, Constance Maher, Arlington, for Appellant.

Uloth & Peavler, L.L.P., Donna Peavler, Dallas, for Appellee.

Panel B: HOLMAN, GARDNER, and WALKER, JJ.

## OPINION

DIXON W. HOLMAN, Justice.

### I. FACTUAL AND PROCEDURAL BACKGROUND

An automatic door struck Appellant Dorothy Fethkenher as she was exiting a Kroger store in Granbury, Texas on September 13, 1999. Appellant reported the incident to Kroger and went home, where she treated injuries to her head, right hand, and right arm with ice and over-the-counter pain medicine. The following day, Appellant went to a hospital emergency room, seeking medical attention for pain and swelling in her right hand and arm. After x-rays revealed no broken bones, the emergency room doctor referred Appellant to an osteopathic doctor, who in turn referred her to a physical therapist. When Appellant's condition did not improve with therapy, she sought a second opinion from Dr. Robert Protzman, an orthopedic surgeon. After a course of more conservative treatment failed, Appellant underwent three separate surgeries to eliminate pain and other problems, including ulnar nerve surgery on both her *left* and right arms and endoscopic carpal tunnel release on her right wrist.

Appellant sued Appellee The Kroger Co. for negligence seeking damages for the cost of medical care, pain and suffering, impairment, and disfigurement. Appellee denied liability and alleged a number of defenses to Appellant's claims. In connection with the suit, Appellant sent Kroger an interrogatory that included a request that Kroger describe "any previous incidents pertaining to automatic door malfunction at The Kroger Co. stores during the last ten (10) years, from 1989 through

1999." Appellee, noting that it operates over 2,500 grocery stores in more than thirty states, objected to this request as being overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Appellee confirmed, however, that it had no knowledge of any incidents involving the doors at the Granbury store in the two years prior to Appellant's incident. Appellant filed a motion to compel, asking the trial court to order more complete responses to her discovery requests.

At the hearing on Appellant's motion, Appellee argued that because it had a two-year document retention policy, it was not possible to produce information for the last ten years. The trial court limited Appellant's request and ordered Appellee to produce documents related only to the particular door at the store where the incident occurred for the period dating back to the installation of the doors, approximately three or four years. In response, Appellant asked the trial court to consider modifying the discovery order to include all of the doors in Appellee's southwest region rather than only the door in question. The trial court declined to expand the discovery order to the 188–store region and reiterated Appellee's obligation to produce documents relating only to the specific door involved in the incident.

Throughout this case, the parties' attorneys demonstrated an acrimonious working relationship and an inability to conduct discovery without court intervention. The record is replete with accusatory letters from both sides, three motions to compel, and five separate motions for sanctions-two from the Appellant and three from the Appellee. On September 27, 2002, Appellee filed its second motion for sanctions against Appellant's counsel under Texas Rules of Civil Procedure 215.1 and 215.2. Claiming several justifications for the imposition of sanctions, Appellee asked the court to fine Appellant's counsel $2,967.25. Appellee's motion for sanctions requested relief based on allegations that Appellant's counsel:

1) Refused to produce Appellant for deposition.
2) Refused to attempt an agreed proposed order regarding the trial court's rulings on a previous motion to compel.
3) Refused to non-suit a Kroger store manager that did not work at the Granbury store at the time of the incident, as previously promised by Appellant's attorney.
4) Refused to confer on Appellee's motion to compel. Specifically, Appellant's counsel failed to respond to two letters asking for supplemental discovery responses.

Appellee attached numerous exhibits to the motion consisting primarily of correspondence between the parties' attorneys. Appellant's response, filed on October 7, 2002, notified the court that her deposition was noticed by Appellee for October 15, 2002.

At the hearing on the motion, Appellee urged the court to sanction Appellant's counsel· for the reasons set forth in the sanctions motion as well as for new allegations. According to Appellee, Appellant's counsel misrepresented that she was subject to a trial setting in Dallas County that conflicted with the sanctions hearing in Hood County. Appellee informed the court that she called the court in Dallas County to confirm the conflict and discovered that Appellant's counsel was not, in fact, called to trial. Claiming a lack of candor to the court and opposing counsel, Appellee increased its request for sanctions to $5,000.

Appellant's counsel informed the trial court that the court in Dallas County noti-

fied her that she was on one-hour standby to appear at trial. As explained by Appellant's counsel, the Dallas court has a list of cases that are to be heard during a given week, and all cases on that list are on standby. Even though a case from the prior week was carried over, the court's instruction that Appellant's counsel remain on one-hour standby did not change. The trial court granted Appellee's motion "as a result of the various activities as set forth in the motion and as developed through the letters that are before the court," and ordered $1,500 in sanctions.

A trial was held on the merits of Appellant's case in November 2002. Garry De-Long, the store manager, testified at length about the doors. He explained that the doors appeared to be functioning normally immediately before and after the incident. DeLong attempted to get the door to improperly close again, but was unable to recreate the incident. With the help of a door repairman, DeLong again attempted to recreate the incident to no avail. According to DeLong, the repairman did not discover any malfunction and consequently did not make repairs to the door. Gail Maples, the former front-end manager, and Betty Jean Daughrity, the current front-end manager, testified that no one ever reported any previous problems regarding the doors closing on people. Several repair records and work orders admitted into evidence showed no problems of a similar nature that would cause the doors to improperly shut on people.

At the close of evidence, the jury was charged with determining whether the negligence of either or both parties proximately caused the occurrence. The jury charge included the following additional instructions:

An owner or occupier of a premises is not an insurer of the safety of its invitees.

An occurrence may be an "unavoidable accident," that is, an event not proximately caused by the negligence of any party to it.

. . . .

In order to establish that THE KROGER CO. "reasonably should have known of the danger[,]" there must be some proof of how long the hazard existed prior to the incident in question.

The jury returned a verdict in favor of Appellee and the trial court rendered a take-nothing judgment against Appellant. In three issues, Appellant argues that the trial court erred: 1) in limiting her discovery regarding other automatic door-related injuries at Kroger stores; 2) in allowing unnecessary jury instructions that constituted impermissible comments on the weight of the evidence; and 3) in sanctioning Appellant's counsel. We affirm in part and reverse and render in part.

## II. DISCUSSION

### A. DISCOVERY

 In her first issue, Appellant contends that the trial court erred in limiting her discovery regarding automatic doors to only the door involved in the accident because she was entitled to information pertaining to all automatic doors in every Kroger store over a ten-year period, as she requested in her interrogatory. We review discovery rulings for an abuse of discretion. *In re CSX Corp.*, 124 S.W.3d 149, 152 (Tex.2003) (orig.proceeding). A trial court abuses its discretion when it acts without reference to guiding rules and principles. *In re Colonial Pipeline Co.*, 968 S.W.2d 938, 941 (Tex.1998) (orig.proceeding). Although the scope of discovery is broad, it is limited by the legitimate

interests of the opposing party to avoid overly broad requests, harassment, or disclosure of privileged information. *In re Am. Optical Corp.*, 988 S.W.2d 711, 713 (Tex.1998) (orig.proceeding). A central consideration in determining overbreadth is whether discovery requests could have been more narrowly tailored. *CSX*, 124 S.W.3d at 153. Discovery may not be used as a fishing expedition or to impose unreasonable expenses on the opposing party. *K Mart Corp. v. Sanderson*, 937 S.W.2d 429, 431 (Tex.1996) (orig.proceeding).

■ The discovery request at issue, Appellant's interrogatory, asked Appellee to describe, in detail, any previous incidents pertaining to automatic door malfunctions at over 2,500 Kroger stores during the preceding ten years. The Texas Supreme Court has, on many occasions, held that requests like this are overly broad as a matter of law. *CSX*, 124 S.W.3d at 153 (stating that request to identify all safety employees who worked for defendant over a thirty-year period qualifies as a "fishing expedition"); *K Mart*, 937 S.W.2d at 431 (holding that request for information relating to all criminal activity on all K Mart property over last seven years was overbroad); *Dillard Dep't Stores, Inc. v. Hall*, 909 S.W.2d 491, 492 (Tex.1995) (orig.proceeding) (stating that a 227 store search in twenty states for documents over a five-year period is overly broad as a matter of law). Although Appellant's request to narrow her scope of discovery to the 188 stores in Kroger's southwest region significantly reduced her original request for information regarding over 2,500 stores, Appellant failed to narrow the request in a manner that would heighten its relevancy. Appellant did not tailor her discovery to a particular type of door or sensor or even a particular manner of malfunction, which might have made it easier to establish that the request is reasonably calculated to lead

to the discovery of admissible evidence. As written, Appellant's request appears to be a "fishing expedition" for information regarding potential problems with automatic doors in general.

■ Furthermore, Appellant's request is unduly burdensome. Texas discovery rules encourage trial courts to limit discovery when the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues. *In re Alford Chevrolet-Geo*, 997 S.W.2d 173, 181 (Tex.1999) (orig.proceeding) (citing Tex.R. Civ. P. 192.4(b)). Appellee provided the affidavit of Georgia Waitkus, a claims specialist in its risk management department, which stated that it would take between 376 and 564 hours of manpower to gather information for just one of its seventeen regional divisions. Recognizing that the scope of discovery is largely within the discretion of the trial court, we conclude that the trial court did not abuse its discretion in limiting Appellant's request to the door in question over a three or four-year period. *See CSX*, 124 S.W.3d at 152. We overrule Appellant's first issue.

### B. JURY INSTRUCTIONS

■ Appellant, in her second issue, argues that the trial court's jury charge included unnecessary and impermissible instructions to the jury. We review a jury charge under an abuse of discretion standard. *In re J.T.G.*, 121 S.W.3d 117, 128 (Tex.App.-Fort Worth 2003, no pet.). Pursuant to the Texas Rules of Civil Procedure, a trial court is required to submit "such instructions and definitions as shall be proper to enable the jury to render a verdict." Tex.R. Civ. P. 277. Trial courts are afforded considerable discretion in de-

ciding what instructions are necessary and proper in submitting issues to the jury. *State Farm Lloyds v. Nicolau,* 951 S.W.2d 444, 451 (Tex.1997). For an instruction to be proper, it must (1) assist the jury, (2) accurately state the law, and (3) find support in the pleadings and the evidence. *Tex. Workers' Comp. Ins. Fund v. Mandlbauer,* 34 S.W.3d 909, 912 (Tex.2000).

 Error in a jury charge is reversible only if it probably caused the rendition of an improper judgment or probably prevented the appellant from properly presenting the case on appeal. *In re D.I.B.,* 988 S.W.2d 753, 756 & n. 10 (Tex.1999); *see* TEX.R.APP. P. 44.1(a). To preserve a complaint premised on the jury charge for appellate review, a party must point out distinctly the objectionable matter and the grounds for the objection. TEX.R. CIV. P. 274. The test for preservation of a jury charge complaint is whether the party made the trial court aware of the complaint, timely and plainly, and obtained a ruling. TEX.R.APP. P. 33.1(a); *see State Dep't of Highways & Pub. Transp. v. Payne,* 838 S.W.2d 235, 241 (Tex.1992) (op. on reh'g).

### 1. "NOT AN INSURER" INSTRUCTION

 Appellant first challenges the trial court's jury instruction that an owner or occupier of a premises is not an insurer of the safety of its invitees, arguing that it constituted an improper comment on the weight of the evidence. At trial, Appellant objected to the "owner is not an insurer" instruction as follows:

> We object to, I guess, the instruction an owner or occupier of the premises not an [i]nsurer of the safety of its invitees— that is taken from the Reese case, and it's a—I mean, the Texas Supreme Court case where they are just saying where there is a third party who has been negligent—that obviously the occu-

pier of premises not an [i]nsurer of the safety of its invitees, it is not intended and [is not] to be used as pattern jury charges for the jury. It's for appellate purposes for the general rule as far as premises liability. It's never been, to my knowledge, used in a premise case as far as a charge to the jury.

Appellee contends that Appellant's objection on appeal that the instruction is an improper comment on the weight of the evidence differs substantially from the objection she made at trial.

Although the Texas Supreme Court has held that we should concern ourselves with common sense and refrain from promoting form over substance, objecting parties must nevertheless make the trial court aware of the complaint, timely and plainly. *Payne,* 838 S.W.2d at 241. In *Willis v. Donnelly,* Houston's Fourteenth Court of Appeals addressed the Willises' objection to the trial court's instruction that a fiduciary duty existed because the existence of a fiduciary duty is a question of fact for the jury. 118 S.W.3d 10, 33–34 (Tex.App.-Houston [14th Dist.] 2003, no pet.). In that case, the Willises objected to the instruction for two reasons. *Id.* at 33. First, that there was no evidence to support the submission of the issue. *Id.* Second, that as a matter of law, there was no fiduciary duty. *Id.* The court concluded that the Willises' objections were insufficient to alert the trial court that the existence of a fiduciary relationship was a fact question for the jury and held that any error in the jury charge was not preserved. *Id.* at 34.

Here, Appellant objected to the "not an insurer" instruction on two grounds—that it is an incorrect statement of the law and that it is not intended as a pattern jury charge. Appellee points out that Appellant did not refer to the instruction as a "comment" or as affecting the weight of

**32**

the evidence, nor suggest it might improperly persuade, nudge, or prejudice the jury. Thus, Appellee argues, the trial court likely understood Appellant's objection as being that the instruction was an incorrect statement of the law and not intended as a pattern jury charge. We agree. Appellant's objections did not serve to make the trial court aware of her complaint that the instruction is an impermissible comment on the weight of the evidence and she therefore waived her right to raise this issue on appeal. *See id.; see City of Weatherford v. Catron*, 83 S.W.3d 261, 272 (Tex.App.-Fort Worth 2002, no pet.); *El Paso Refining, Inc. v. Scurlock Permian Corp.*, 77 S.W.3d 374, 386 (Tex.App.-El Paso 2002, pet. denied) (op. on reh'g).

### 2. "UNAVOIDABLE ACCIDENT" INSTRUCTION

▮ Appellant additionally challenges the trial court's instruction that, "[a]n occurrence may be an 'unavoidable accident.'" An unavoidable accident is "an event not proximately caused by the negligence of any party to it." *Reinhart v. Young*, 906 S.W.2d 471, 472 (Tex.1995); *Tanner v. Karnavas*, 86 S.W.3d 737, 740 (Tex.App.-Dallas 2002, pet. denied). The purpose of an unavoidable accident instruction is to ensure that jurors will understand that they do not necessarily have to find that one of the parties is to blame for the occurrence. *Reinhart*, 906 S.W.2d at 472. The instruction is proper only when there is evidence that the event was proximately caused by a nonhuman condition and not by the negligence of any party to the event. *Hill v. Winn Dixie Tex., Inc.*, 849 S.W.2d 802, 803 (Tex.1992). It is most often used to inquire about the causal effect of some physical condition or circumstance such as fog, snow, sleet, wet or slick pavement, or obstruction of view. *Reinhart*, 906 S.W.2d at 472. When there

is no evidence that the accident was caused by some such peculiar circumstance, submission of the instruction is generally improper. *See Hicks v. Brown*, 136 Tex. 399, 151 S.W.2d 790, 792 (1941). The Texas Supreme Court has stated that courts should refrain from submitting an unavoidable accident instruction due to the risk that the instruction will confuse or mislead the jury. *Reinhart*, 906 S.W.2d at 472; *Hill*, 849 S.W.2d at 803. In fact, several justices have expressed that they would like to see the instruction all together abolished in Texas. *See Reinhart*, 906 S.W.2d at 477 (Enoch, J. concurring); *see also id.* at 477–78 (Hightower, J. dissenting, joined by Cornyn, J. and Gammage, J.).

▮ Appellant objected to the unavoidable accident instruction at trial as an improper comment on the weight of the evidence, stating:

I believe that is a comment on the evidence because basically, Your Honor, you are asking whether or not the negligence of any of those named below caused the incident. If not, then they would answer so.

But to also express the occurrence may be an unavoidable accident that is not caused by the negligence of any party, I believe, is a comment on the evidence.

In her appellate brief, Appellant states that an unavoidable accident instruction is disfavored "because of the message it sends to the jury" and "it essentially tells the jury that the event in question is nobody's fault." Appellee claims that Appellant waived this complaint because it differs from her objections at trial. As characterized by Appellee, Appellant's argument on appeal is that the instruction is unsupported by the evidence, rather than that the instruction was an improper comment on the weight of the evidence. Thus, according to Appellee, Appellant

cannot, for the first time on appeal, argue that the instruction is not supported by the evidence because her objection at trial did not plainly make the trial court aware that this was her objection.

A review of Appellant's brief leads us to conclude that Appellant's argument on appeal is that the unavoidable accident instruction was an impermissible comment on the evidence *because* the instruction was unsupported by the evidence. Furthermore, the cases cited by Appellant in support of her argument address unavoidable accident instructions that constitute impermissible comments on the weight of the evidence because they are unsupported by the evidence. *See Lemos v. Montez,* 680 S.W.2d 798, 801 (Tex.1984); *Otis Elevator Co. v. Shows,* 822 S.W.2d 59, 61 (Tex.App.-Houston [1st Dist.] 1991, writ denied). Thus, we conclude that Appellant's objections do not differ from her complaints on appeal, and we will address her complaint.

■ An extensive review of the record reflects that there is no evidence that the automatic door's malfunction was proximately caused by a nonhuman event. *See Hill,* 849 S.W.2d at 803. Appellee argues that it produced sufficient evidence to support the instruction, relying solely on the following testimony of Robert Hamilton, Appellee's assistant risk manager:

Q. [Appellee's attorney] Is the door supposed to close on customers?

A. I don't think it's designed to do that, no. I know I get pages on my pagers sometimes that don't have numbers and have hieroglyphics, and I don't think there's anything necessarily faulty with my pager. I think it's more of an electronic anomaly. I know and I have heard of that from time to time. The [sun] can cause havoc with sensors, and there's reflection off of windshields, off a piece of jewelry or whatever.... If

there is some [type] of glitch in the electricity supplied at a door, that could cause something to go. I don't think that's, again, a malfunction necessarily of the door. I think there's sometimes outside interference factors.

Q. Do you know of any outside interference factors in this particular case on September 13th, 1999?

A. No.

Appellee, during closing argument, again identified plausible causes for the door's malfunction that might be construed as nonhuman events, including a "bleep in the electricity supply" and a reflection off of a windshield. Although these theories regarding the door's malfunction might be construed as nonhuman events, Appellee did not provide any affirmative evidence whatsoever that the door's malfunction was proximately caused by any of these theories. In the absence of any affirmative evidence, we conclude that the instruction regarding unavoidable accidents was improper. *See Hill,* 849 S.W.2d at 803. Having concluded that the unavoidable accident instruction was improper, we must now address whether the trial court committed reversible error.

■ Error in the jury charge is reversible only if, in light of the entire record, it probably caused the rendition of an improper judgment or probably prevented Appellant from properly presenting her case to the court of appeals. Tex.R.App. P. 44.1(a). Appellant relies on *Urista v. Bed, Bath, & Beyond, Inc.,* to support her contention that the trial court's inclusion of the unavoidable accident instruction was reversible error. No. 01–02–00150–CV, 132 S.W.3d 517 (Tex.App.-Houston [1st Dist.] 2004, no pet.) (op. on reh'g). In that case, the jury was charged with a general negligence question accompanied with an unavoidable accident instruction identical to the one given in the case at hand. *Id.*

**34**

at 519. On appeal, the majority held that because there was nothing in the record supporting an unavoidable accident, the instruction was improper. *Id.* at 521–22. In concluding that the error was reversible, the court questioned the sufficiency of the evidence in support of the verdict and specifically noted two factors that affected its decision. *Id.* at 522–23. First, the court remarked that the defendant's reliance on an "accidents happen" theory during trial likely caused the jury to be influenced by the erroneous instruction, which specifically mentions accidents. *Id.* Second, the court recognized that two jurors would not have found the defendant guilty of negligence and noted that "[a]n incorrect instruction is especially likely to cause reversible error when the evidence is conflicting and the issues hotly contested." *Id.* at 521–22.

We conclude that the facts in the case at hand are distinguishable and more akin to those in *Reinhart.* In *Reinhart,* the Texas Supreme Court held that the trial court's error in submitting an unavoidable accident instruction was harmless error, stating that:

> No evidence in this case even remotely suggests that the unavoidable accident instruction in any way caused the case to be decided differently than it would have been without it.

906 S.W.2d at 472; *see also Hill,* 849 S.W.2d at 803 (holding that an erroneous unavoidable accident instruction did not warrant reversal). In the instant case, like in *Reinhart,* liability was not closely contested. Appellee secured a unanimous jury verdict of no liability, and the record demonstrates that the jury did not ask any questions about the instruction or its role in their deliberations. *See Reinhart,* 906 S.W.2d at 473–74. Further, Appellant's burden to establish that Appellee knew or should have known of the alleged hazard

was not met. Consequently, under the circumstances of this particular case, we conclude that it is not likely that the erroneous unavoidable accident instruction caused the rendition of an improper judgment.

### 3. "TIME OF HAZARD" INSTRUCTION

Finally, Appellant contends that the instruction requiring the jury to find proof of how long the hazard existed prior to the incident in question was prejudicial and improper for several reasons. Appellant argues that the instruction is 1) an incorrect statement of the law, 2) unnecessarily duplicative, and 3) contradicts the *res ipsa loquitur* instruction, which allowed the jury to find Appellee negligent, even in the absence of direct evidence. We first note that because Appellant's only objection to this instruction at trial was that it was an incorrect statement of the law, we will not address whether the instruction was unnecessarily duplicative or contradicted the *res ipsa loquitur* instruction. *See* Tex.R.App. P. 33.1(a); *Payne,* 838 S.W.2d at 241. Secondly, Appellant's argument is inadequately briefed, as it fails to cite any legal authority for the proposition that the instruction is an incorrect statement of the law. Tex.R.App. P. 38.1(h); *see Fredonia State Bank v. Gen. Am. Life Ins. Co.,* 881 S.W.2d 279, 284 (Tex.1994). Therefore Appellant presents nothing for review regarding the "time of hazard" instruction.

Having addressed all of Appellant's arguments regarding the jury instructions in favor of Appellee, we overrule Appellant's second issue.

### C. SANCTIONS

Appellant's final contention on appeal is that the court erred in imposing sanctions on Appellant's attorney. A trial court's sanctions award is reviewed for abuse of discretion. *Walker v. Packer,* 827

S.W.2d 833, 839–40 (Tex.1992) (orig.proceeding). Discovery sanctions serve three purposes: 1) to secure the parties' compliance with the discovery rules; 2) to deter other litigants from violating the discovery rules; and 3) to punish parties who violate the discovery rules. *McRae v. Guinn Flying Serv.*, 778 S.W.2d 189, 191 (Tex.App.-Houston [1st Dist.] 1989, no writ). Although the choice of sanctions under Rule 215 is left to the sound discretion of the trial judge, the sanctions imposed must be just. Tex.R. Civ. P. 215.2; *Wal–Mart Stores, Inc. v. Butler*, 41 S.W.3d 816, 817 (Tex.App.-Dallas 2001, no pet.). There are certain limitations on a trial judge's power to impose sanctions for discovery abuse. First, the sanction must bear a direct relationship to the offensive conduct. *Trans-American Natural Gas Corp. v. Powell*, 811 S.W.2d 913, 917 (Tex.1991) (orig.proceeding). Second, the sanction must not be excessive; it should be no more severe than necessary to satisfy its legitimate purposes. *Id.* In considering whether sanctions are just, we review the entire record, including the evidence, arguments of counsel, written discovery on file, and the circumstances surrounding the parties' discovery abuse. *Daniel v. Kelley Oil Corp.*, 981 S.W.2d 230, 234 (Tex.App.-Houston [1st Dist.] 1998, pet. denied) (op. on reh'g). Appellant first argues that any sanctions attributable to Appellee's alleged misrepresentation regarding a conflicting trial in Dallas County are improper because Appellee's motion did not mention this accusation, and Appellant had no notice that Appellee would seek sanctions for this act. The record, however, does not demonstrate that any portion of the sanctions ordered by the trial court resulted from this allegation. The trial court specifically stated at the hearing that the motion was granted "as a result of the various activities as set forth in the motion and as developed through the letters that are before the court."[1] Thus, we need not address whether Appellant received timely notice of Appellee's allegations regarding the hearing conflict.

We further note that Appellee's second motion for sanctions cited civil Rules 215.1(d) and 215.2(b) as a basis for entitlement to sanctions relief, both of which apply to discovery abuse. Tex.R. Civ. P. 215.1(d), 215.2(b). Notably, two of the allegations made by Appellee in the motion do not provide a basis for awarding sanctions under Rule 215:

1) Appellant's refusal to attempt an agreed proposed order regarding the trial court's rulings on a previous motion to compel.

2) Appellant's refusal to non-suit a Kroger store manager that did not work at the Granbury store at the time of the incident, as previously promised by Appellant's attorney.

This leaves only two allegations that are sanctionable under Rule 215.1(d) or 215.2(b). First, is the alleged failure of Appellant's attorney to produce Appellant for deposition. Second, is Appellee's contention that Appellant's counsel failed to respond to two letters asking for supplemental discovery responses.

In reviewing the entire record, including the evidence, arguments of counsel, written discovery on file, and the circumstances surrounding the deposition of Appellant, we conclude that the $1,500 sanctions award was not warranted. The parties' attorneys maintained a contentious working relationship throughout this

---

1. None of the letters referred to by the trial court relate to the scheduling conflict with the sanctions hearing.

dispute as evidenced by their interaction in setting a deposition date for Appellant. In a series of letters between the parties, a pattern of uncooperative behavior is evidenced from both sides.

According to the exhibits attached to the motion for sanctions, Appellee's first written request to depose Appellant was on July 19, 2002. The letter simply requested Appellant to apprise Appellee of dates the Appellant was available for deposition. In her response letter, dated July 23, 2002, Appellant's counsel stated that because Appellee wholly failed to provide Appellant with any meaningful discovery, she would refuse to make her client available for deposition until after the court's ruling on her motion to compel, scheduled on August 15, 2002. On August 7, 2002, Appellee sent a notice of intention to take the oral deposition of Appellant on August 14, 2002, one day before the hearing on Appellant's motion to compel. Appellant, in turn, filed a motion to quash the deposition asking the court to delay the deposition until after the hearing on Appellant's motion to compel. At the hearing, the parties represented to the trial court that they could reach an agreement on the deposition date, and the trial court admonished the parties that "[t]he plaintiff needs to be produced, and, of course, Kroger needs to produce whomever they should produce."

The next correspondence regarding Appellant's deposition found in the record is a letter from Appellee dated September 5, 2002. In that letter, Appellee remarked on Appellant's failure to provide dates of availability for deposition and suggested seven different days in September for the deposition. On the same day, Appellant sent a letter to the court with a copy to Appellee stating that Appellant's counsel would be out of the office on vacation and for personal commitments from September 11, 2002 until October 9, 2002. The letter advised "all counsel of record that [Appellant's attorney would] be unavailable to participate in depositions or discovery matters during the dates set forth above."

Thereafter, Appellee sent a notice of intent to take the oral deposition of Appellant on September 9, 2002. Appellant informed Appellee that she would not be available, citing Appellant's unavailability on such short notice and that the notice was "less than one business day in advance of the deposition." Apparently, the parties ultimately reached an agreement on a date for Appellant's deposition. The record reflects that Appellee sent a letter to Appellant on September 9, 2002, confirming the parties' agreement to conduct Appellant's deposition on October 15, 2002 in the offices of Appellant's attorney. Despite this agreement, which Appellant made no objections to, Appellee filed the motion for sanctions on September 27, 2002, as well as a motion to compel Appellant's deposition. The motion to compel Appellant's deposition requested the trial court to order Appellant's deposition on or before October 4, 2002. The sanctions hearing was held on October 7, 2002, eight days before Appellant's scheduled deposition.

Although it is obvious from the record that the parties were unable to conduct discovery without the court's intervention and that Appellant's attorney was uncooperative in scheduling her client for deposition, the trial court's sanctions are excessive in light of the entire record. Other, less severe sanctions would have satisfied the trial court's presumed legitimate purpose of enforcing cooperative compliance with discovery rules, especially in light of the fact that the trial court ordered sanctions prior to Appellant's scheduled, and agreed upon, date for deposition. For example, the trial court could have ordered Appellant's deposition for a specific date before imposing monetary sanctions. Ac-

cordingly, we hold that the trial court abused its discretion in awarding sanctions, and we sustain Appellant's third issue.

### III. CONCLUSION

For the reasons stated above, we affirm the trial court's take-nothing judgment in favor of Appellee. We reverse the trial court's sanctions order and render judgment denying Appellee's motion for sanctions.