Charles M. WILSON, III and Goranson Bain, PLLC, Appellants

v.

SHAMOUN & NORMAN, LLP, Appellee

No. 05-15-01448-CV

Court of Appeals of Texas, Dallas.

Opinion Filed April 13, 2017.

Charles M. Wilson III, Dallas, TX, pro se.

Christopher Martin Lake, Goranson Bain PLLC, Dallas, TX, for Appellant.

Nathan Johnson, Spector & Johnson, PLLC, Jonathan J. Cunningham, Fidelity National Law Group, Dallas, TX, C. Gregory Shamoun, Kenneth J. Lambert, Kevin Moran, Shamoun & Norman, L.L.P., Farmers Branch, TX, for Appellee.

Before Justices Bridges, Evans, and Schenck

## OPINION

Opinion by Justice Evans

Appellants Charles M. Wilson, III and Goranson Bain, PLLC assert that the trial court did not have jurisdiction to render a discovery sanctions order for $1,837.50. Wilson and Goranson Bain further assert they did not abuse the discovery process or act in bad faith by suspending a deposition. Finally, Wilson and Goranson Bain assert the trial court abused its discretion in rendering the sanctions order. We affirm.

## BACKGROUND

Appellee Shamoun & Norman, LLP represented Dr. Robert Schwartz in his divorce case in the 254th district court. Shamoun & Norman withdrew from the case and was succeeded by Goranson Bain. Wilson is an attorney at Goranson Bain. Shamoun & Norman later filed a petition in intervention in the divorce case alleging Schwartz failed to pay its fees. Shamoun & Norman then nonsuited its intervention and filed a new case against Schwartz in the 101st district court. Schwartz responded by filing an answer and a motion to transfer the fee case back to the 254th district court.

By order dated February 2, 2015 ("Denial of Transfer Order"), the 101st district

court denied the motion to transfer. The Denial of Transfer Order included the following language:

IT IS THEREFORE, ORDERED, ADJUDGED AND DECREED that Defendant Robert Schwartz's Motion to Transfer is hereby DENIED, in its entirety.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that all relief requested in this case and not expressly granted herein is DENIED.

On April 1, 2015, Shamoun & Norman served a deposition notice for Schwartz for April 15, 2015. On April 14, 2015, Wilson filed a verified plea to the jurisdiction arguing that the Denial of Transfer Order constituted a final judgment and that the 101st district court lost plenary jurisdiction on March 4, 2015.

By letter dated April 14, 2015, Wilson requested Shamoun & Norman to stipulate to a suspension of the deposition and advised that if it did not so stipulate Wilson intended to suspend the deposition once Schwartz was sworn in. Shamoun & Norman did not agree to suspend the deposition and Wilson suspended Schwartz's deposition after he was sworn in.

On April 23, 2015, Nathan Johnson filed an agreed motion to substitute counsel to replace Wilson and Goranson Bain as Schwartz's counsel. Johnson set the plea to the court's jurisdiction for hearing. The trial court denied the plea to the jurisdiction.

Shamoun & Norman filed a motion to compel Schwartz's deposition and requested sanctions. The trial court heard and granted the motion ("Sanctions Order"). The trial court specifically found that Wilson and Goranson Bain were "liable for abusing the discovery process in seeking, making, and/or resisting discovery in a timely manner as required by TEX. R.

CIV. P. 199.4." Pursuant to rule 215.2(b)(8), the trial court did not find that "the noncompliance was substantially justified or any other circumstances that would make this award of expenses unjust." The trial court ordered Wilson and Goranson Bain to pay Shamoun & Norman's attorney's fees and expenses related to the deposition in the amount of $1,837.50. The trial court severed the Sanctions Order and this appeal was timely filed.

## ANALYSIS

### A. Denial of Transfer Order

In their first issue, Wilson and Goranson Bain argue that the Denial of Transfer Order constituted a final judgment so thirty days thereafter the trial court did not have jurisdiction to render the Sanctions Order. In support of this argument, Wilson and Goranson Bain contend that (1) the Denial of Transfer Order disposes of all parties and claims, (2) the second paragraph is a final order, and (3) it is irrelevant if this final order was rendered by mistake. We disagree.

We review a lower court's determination of its jurisdiction de novo. *See CMH Homes v. Perez*, 340 S.W.3d 444, 447 (Tex. 2011) (citing *Villafani v. Trejo*, 251 S.W.3d 466, 467 (Tex. 2008)).

### 1. Denial of Transfer Order does not dispose of all parties and claims

Wilson and Goranson Bain assert that a judgment is final for purposes of appeal if it disposes of all pending parties and claims in the record. Wilson and Goranson Bain note that this lawsuit involves Shamoun & Norman's claim against Schwartz for the unpaid portion of its fees. Without reference to the record or any case law, Wilson and Goranson Bain summarily conclude that "[a]fter a review of this record it is clear there are no parties and/or claims that are not disposed of by

the 101st District Court's February 2, 2015, Order."

We disagree. The supreme court decided that a judgment issued without a conventional trial is final for purposes of appeal if and only if either it actually disposes of all claims and parties then before the court, regardless of its language, or it states with unmistakable clarity that it is a final judgment as to all claims and all parties. *Lehmann v. Har-Con Corp.*, 39 S.W.3d 191, 192–93 (Tex. 2001). Here, the petition filed by Shamoun & Norman included claims against Schwartz for suit on sworn account, breach of contract, and attorney's fees. In the motion to transfer, the only relief sought by Schwartz was a mandatory transfer of the case to the 254th judicial district court. In the Denial of Transfer Order, the trial court only considered and denied the motion to transfer. The order did not purport to render judgment as to any party or claim. Indeed, there is nothing in the Denial of Transfer Order or the record that indicates that the trial court intended to address any of the substantive claims raised by the parties.

## 2. Denial of Transfer Order contains no indication of finality

The supreme court defined a mother hubbard clause as the statement "all relief not granted is denied" or "essentially those words." *Lehmann*, 39 S.W.3d at 203. In *Lehmann*, the supreme court noted that the routine inclusion of mother hubbard clauses in otherwise plainly interlocutory orders and their ambiguity in many contexts have rendered the clause inapt for determining finality when there has not been a trial. *Id.* at 192. The supreme court concluded that "[w]e no longer believe that a Mother Hubbard clause in an order or in a judgment issued without a full trial can be taken to indicate finality." *Id.* The supreme court then provided guidelines for determining when an order or judgment does provide finality for purposes of an appeal:

From the cases we have reviewed here, we conclude that when there has not been a conventional trial on the merits, an order or judgment is not final for purposes of appeal unless it actually disposes of every pending claim and party or unless it clearly and unequivocally states that it finally disposes of all claims and all parties. An order that adjudicates only the plaintiff's claims against the defendant does not adjudicate a counterclaim, cross-claim, or third party claim, nor does an order adjudicating claims like the latter dispose of the plaintiff's claims. An order that disposes of claims by only one of multiple plaintiffs or against one of multiple defendants does not adjudicate claims by or against other parties. An order does not dispose of all claims and all parties merely because it is entitled "final", or because the word "final" appears elsewhere in the order, or even because it awards costs. Nor does an order completely dispose of a case merely because it states that it is appealable, since even interlocutory orders may sometimes be appealable. Rather, there must be some other clear indication that the trial court intended the order to completely dispose of the entire case. Language that the plaintiff take nothing by his claims in the case, or that the case is dismissed, shows finality if there are no other claims by other parties; but language that "plaintiff take nothing by his claims against X" when there is more than one defendant or other parties in the case does not indicate finality.

*Id.* at 205.

■ Here, the Denial of Transfer Order language at issue is as follows:

IT IS THEREFORE, ORDERED, ADJUDGED AND DECREED that Defendant Robert Schwartz's Motion to Transfer is hereby DENIED, in its entirety.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that all relief requested in this case and not expressly granted herein is DENIED.

Shamoun & Norman contends that the Denial of Transfer Order contains a mother hubbard clause. Wilson and Goranson Bain argue that the first paragraph disposes of the motion to transfer and the second paragraph disposes of the entire case because it is a separate paragraph and "in this case" distinguishes the sentence from a mother hubbard clause. In support of its argument, Wilson and Goranson Bain rely on *In the Interest of F.A.S.*, No. 09-14-00425-CV, 2015 WL 6520478 (Tex. App.—Beaumont Oct. 29, 2015, no pet.) (mem. op.).

In *F.A.S.*, mother and father divorced and the divorce decree awarded mother the exclusive right to designate the primary residence of the child. *Id.* at *1. Father then filed a petition to modify the parent-child relationship and the trial court held a hearing and orally denied the motion. On June 13, 2013, the trial court signed an order which stated:

> On May 2, 2013 Petitioner's Petition to Modify Parent–Child Relationship was called to the attention of the Court.
>
> *Petitioner's Requested Modification*
>
> The suit was filed for the purpose of modifying the prior order of the Court to add a residency restriction for the child.
>
> IT IS ORDERED that the request to modify the prior order of the Court is DENIED.
>
> *Relief Not Granted*

> IT IS ORDERED that all relief requested in this case and not expressly granted is denied. All terms of the prior orders not specifically modified in this order shall remain in full force and effect.

*Id.* at *2 (underline emphasis added). More than thirty days after rendition of this order, the parties continued to litigate the case and mother filed a motion for summary judgment. *Id.* The trial court granted mother's summary judgment motion and father appealed. *Id.* On appeal, the court of appeals held that "the written order signed and filed June 13, 2013, denying Father's Petition to Modify disposed of the entire controversy and was a final appealable order." *Id.* at *3. As father had failed to file a notice of appeal, the court of appeals vacated the order granting summary judgment and dismissed the appeal. *Id.*

Wilson and Goranson Bain contend that the "Court of Appeals in *F.A.S.* found the second separate paragraph of the order to be a final order, disposing of the entire case, even though it contains similar phrasing to the Mother Hubbard clause described in *Lehrmann* [sic]." We disagree with Wilson and Goranson Bain's broad assertions. The *F.A.S.* court did not discuss which part of the order was the "final order" and did not attribute any relevance to separate paragraphs. We also note that by denying the motion to modify, the *F.A.S.* court left no issues to be decided and that such an order modifying a previous order in a suit affecting the parent-child relationship, following a hearing, is a final, appealable order. *See Blank v. Nuszen*, No. 01-13-01061-CV, 2015 WL 4747022, at *2 (Tex. App.—Houston [1st Dist.] Aug. 11, 2015, no pet.) (mem. op.); *Lindgren v. Lindgren*, No. 05-02-02001-CV, 2003 WL 21078321, at *1 (Tex. App.—Dallas May 14, 2003, no pet.) (mem. op.).

Wilson and Goranson Bain also argue that the phrase "in this case" distinguishes

the language in the Denial of Transfer Order from the mother hubbard clause in *Farm Bureau County Mutual Insurance Co. v. Rogers*, 455 S.W.3d 161 (Tex. 2015). The *Farm Bureau* order used the phrase "in this cause" as opposed the phrase "in this case" used in *F.A.S.* and the Denial of Transfer Order. Appellants argue that the difference in phrase results in the Denial of Transfer Order lacking the ambiguity discussed in *Farm Bureau*, so we should treat the Denial of Transfer Order as a final order in the same way the order in *F.A.S.* was accorded finality. We see no substantial difference between "in this cause" and "in this case." Accordingly, pursuant to *Farm Bureau* we treat the clause before us as a mother hubbard clause that provides no indicia of finality.

We find *F.A.S.* neither instructive nor controlling. Here, the Denial of Transfer Order only addressed the motion to transfer and would not usually function as a judgment that disposed of all parties and claims. When the trial court denied the motion to transfer, all the substantive issues remained in the case none of which the Denial of Transfer Order addressed. We cannot conclude that the use of a separate paragraph or the clause "in this case" in the Denial of Transfer Order extended beyond the motion to transfer. The larger issue here is that the Denial of Transfer Order lacks any "clear indication that the trial court intended the order to completely dispose of the entire case" because it does not dispose of any claims or any parties. *Lehmann*, 39 S.W.3d at 205. Without any additional finality language, as described above, we conclude that the second paragraph in the Denial of Transfer Order was not a final judgment.

### 3. No mistaken final order in this case

Wilson and Goranson Bain note that the supreme court has held that "if the language of the order is clear and unequivocal, it must be given effect despite any other indications that one or more of the parties did not intend for the judgment to be final." *Lehmann*, 39 S.W.3d at 200. Wilson and Goranson Bain cite *In re Daredia*, 317 S.W.3d 247 (Tex. 2010) (per curiam) in support of their assertion that even if the final order language was included by mistake, the judgment is still binding. In *In re Daredia*, American Express sued Daredia and Map Wireless, Inc. for amounts due on three credit cards. *Id.* at 248. Daredia answered but Map Wireless did not and American Express moved for a default judgment against Map Wireless. *Id.* The trial court rendered a default judgment and the last two sentences provided: "All relief not expressly granted herein is denied. This judgment disposes of all parties and all claims in this cause of action and is therefore FINAL." *Id.* American Express later realized its error and moved for a judgment nunc pro tunc so that it could proceed against Daredia. *Id.* Upon its review, the supreme court held that "the lack of any basis for rendering judgment against Daredia did not preclude dismissing him from the case" and that "the judgment by its clear terms disposed of all claims and parties and was therefore final." *Id.* at 249. As discussed above, however, the Denial of Transfer Order at issue in this case does not contain a disposition of any substantive claim or any party. Accordingly, we conclude that *In re Daredia* is distinguishable and inapplicable based on the Denial of Transfer Order's language.

For all these reasons, we conclude that the Denial of Transfer Order did not constitute a final judgment and resolve Wilson and Goranson Bain's first issue against them.

### B. Sanctions Order

In the Sanctions Order, the trial court found Wilson and Goranson Bain "liable for abusing the discovery process in seeking, making, and/or resisting discovery in a timely manner as required by TEX. R. CIV. P. 199.4." The trial court determined pursuant to rule 215.2(b)(8) that Wilson and Goranson Bain's failure to comply with discovery obligations was not substantially justified. The trial court imposed a sanction for the expenses of the deposition in the amount of $1,837.50.

 A sanctions order for resisting discovery is reviewable on appeal from a final judgment. *See* TEX. R. CIV. P. 215.2(b)(8), 215.3. We review a trial court's ruling on a motion for sanctions using an abuse of discretion standard. *See In re Nat'l Lloyds Ins. Co.*, 507 S.W.3d 219, 226 (Tex. 2016) (orig. proceeding); *Cire v. Cummings*, 134 S.W.3d 835, 838 (Tex. 2004). The test we use for abuse of discretion is "whether the court acted without reference to any guiding rules and principles." *In re Nat'l Lloyds Ins.*, 507 S.W.3d at 226 (quoting *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985)). "To determine whether the sanctions imposed are just, we consider: 'First, . . . whether there is a direct relationship between the offensive conduct and the sanctions. . . . Second, . . . whether the sanctions are excessive." *Id.* (quoting *In re Ford Motor Co.*, 988 S.W.2d 714, 718 (Tex. 1998) (orig. proceeding)).

### 1. Abuse of discovery process

 In the Sanctions Order, the trial court found Wilson and Goranson Bain "liable for abusing the discovery process in seeking, making, and/or resisting discovery in a timely manner as required by TEX. R. CIV. P. 199.4." Wilson and Goranson Bain argue Wilson did not abuse the discovery process because Wilson properly suspended the deposition pursuant to rule 199.5(g).

Wilson and Goranson Bain specifically argue that because the trial court had rendered a final judgment, there was no basis for proceeding with the deposition and the deposition could be suspended for being conducted in violation of the rules. We disagree.

As an initial matter, Wilson and Goranson Bain cite no case law in support of this assertion. Further, we note that the use of "during" in the title of rule 199.5, "examination, objection, and conduct *during* oral depositions," indicates the rule pertains to conduct that occurs during the course of a deposition. *See* TEX. R. CIV. P. 199.5(g) (emphasis added). The text of rule 199.5(g) provides:

> (g) *Suspending the Deposition.* If the time limitations for the deposition have expired or the deposition is being conducted or defended in violation of these rules, a party or witness may suspend the oral deposition for the time necessary to obtain a ruling.

*See id.* The text refers to two types of events that authorize suspension of a deposition: expiration of time limits or violation of applicable rules governing taking depositions. Expiration of time limits could only occur during a deposition that continued beyond the time limits provided for depositions by rule, order, or agreement. Similarly, conducting or defending a deposition in violation of applicable rules could only occur during the deposition. Rule 199.5(g), therefore, specifically addresses events that happen during a deposition. Here, Wilson and Goranson Bain contend rule 199.5(g) could be used by Wilson based on Wilson's contention that the trial court lost plenary jurisdiction over the entire case. But the issue of the trial court's jurisdiction did not pertain to the expiration of deposition time limits nor the conduct or defense of the deposition. Accordingly, Wilson and Goranson Bain cannot rely

upon rule 199.5(g) under the present set of facts as indicated by Wilson's attempt to suspend the deposition before it even commenced.

Wilson and Goranson Bain also argue that they cannot be held liable for abusing the discovery process "in seeking, making, and/or resisting discovery in a timely manner" as required by rule 199.4 because they were not required to file a motion to quash. Although Wilson and Goranson Bain do not cite, nor could we find, any rule or opinion that required Wilson and Goranson Bain to file a motion to quash, filing such a motion was the viable alternative provided by the rules of procedure. *See* Tex. R. Civ. P. 199.4. As Wilson never intended to proceed with the deposition based on his jurisdictional argument, his opportunity to avoid being sanctioned for departing with the witness before the deposition was concluded was to file a motion to quash or otherwise approach the court in advance of the scheduled deposition. If Wilson had filed a motion to quash within three days contending that because the trial court lacked jurisdiction there was no place or time appropriate for the deposition, quashing the deposition would have occurred automatically. *See id.* Had Wilson filed a motion to quash after the initial three days, he could have sought expedited consideration by the trial court. Either way, the trial court could have addressed appellants' jurisdictional arguments without anyone incurring the unnecessary expense for an improperly suspended deposition. Instead, appellants elected to appear at the date and time of the deposition only to immediately suspend the deposition causing Shamoun & Norman to incur travel expenses and preparation costs. On this record, we cannot conclude the trial court

abused its discretion and we resolve Wilson and Goranson Bain's second issue against them.

## 2. Bad faith finding not required to impose sanctions

■ In their third issue, Wilson and Goranson Bain argue that because the trial court did not make a finding that Wilson and Goranson Bain acted in bad faith by filing the plea to the jurisdiction, there is no basis for the imposition of discovery sanctions. We disagree with Wilson and Goranson Bain's assertion that a finding of bad faith is required for imposition of discovery sanctions.[1]

In support of their assertion that a finding of bad faith is required to impose a discovery sanction, Wilson and Goranson Bain cite *Elkins v. Stotts-Brown,* 103 S.W.3d 664 (Tex. App.—Dallas 2003, no pet.) and *Ziemian v. TX Arlington Oaks Apartments, Ltd.,* 233 S.W.3d 548 (Tex. App.—Dallas 2007, pet. struck). Neither case is on point. In *Elkins,* this court analyzed whether the evidence supported an award of sanctions pursuant to rule 13 or chapters 9 and 10 of the civil practice and remedies code. 103 S.W.3d at 667–69. None of these sanctions, however, are at issue in this case. In *Ziemian,* this court analyzed the imposition of sanctions pursuant to rule 13. 233 S.W.3d at 558. Again, in this case the trial court did not award sanctions pursuant to rule 13. Accordingly, the cases cited by Wilson and Goranson Bain are distinguishable and inapplicable to this case as sanctions were awarded pursuant to rule 215.2(b).

Wilson and Goranson Bain appear to argue that their actions cannot be sanctioned because (1) there is no evidence that Wilson filed the plea to the jurisdiction in

---

1. To the extent appellants are raising issues concerning the appropriateness of the trial court's monetary sanctions, we address such arguments in the section below regarding issue four.

bad faith, and (2) Wilson and Goranson Bain demonstrated a good faith basis to suspend the deposition based on extensive research. As to their first argument, the trial court imposed sanctions pursuant to rule 215.2(b) pertaining to Wilson suspending the deposition not his filing of the plea to the jurisdiction. As to their second argument, we considered above their second issue and rejected their argument that Wilson had a basis to suspend the deposition. Further, we analyze the appropriateness of such sanctions below under their fourth issue.

Wilson and Goranson Bain do not support with authority their argument that a finding of bad faith is required for a rule 215.2(b) sanction. The text of rule 215.2(b) does not support that requirement because the phrase and concept of bad faith does not occur in the text. A finding of bad faith does not *necessarily* factor into a trial court's sanction under rule 215.2(b) unless a trial court imposes death penalty sanctions. *See* Tex. R. Civ. P. 215.2(b); *Trans-American Nat. Gas Corp. v. Powell*, 811 S.W.2d 913, 918 (Tex. 1991) (orig. proceeding) (holding that sanctions "which are so severe as to preclude presentation of the merits of the case should not be assessed absent a party's flagrant bad faith or counsel's callous disregard for the responsibilities of discovery under the rules"). That does not mean an extreme monetary or other sanction short of a death penalty would not need to be supported by a record demonstrating conduct amounting to bad faith. But here, Wilson and Goranson Bain make no argument that the $1,837.50 sanction was so severe as to require reversal on that basis. Rather, they argue that no discovery sanction may be imposed without a bad faith finding. As they identify no basis for that argument, we resolve Wilson and Goranson Bain's third issue against them.

### 3. Trial court's discretion to impose sanction it chose

In their fourth issue, Wilson and Goranson Bain challenge several aspects of the sanction imposed by the trial court.

#### a. Applicable law

Rule 215.2 allows a trial court to sanction a party for failure to comply with a discovery order or request. *See* Tex. R. Civ. P. 215.2. Sanctions are used to assure compliance with discovery and to deter those who might be tempted to abuse discovery in the absence of a deterrent. *Cire*, 134 S.W.3d at 839. Discovery sanctions serve three legitimate purposes: (1) to secure compliance with discovery rules; (2) to deter other litigants from similar misconduct; and (3) to punish violators. *See Jones v. Am. Flood Research, Inc.*, 218 S.W.3d 929, 932 (Tex. App.—Dallas 2007, no pet.). Sanctions are left to the discretion of the trial court but the imposition of sanctions must be just. *See TransAmerican Nat. Gas Corp.*, 811 S.W.2d at 917. When considering whether a sanction is just, the appellate court considers whether (1) there is a direct relationship between the offensive conduct and the sanction imposed; and (2) whether the sanction is excessive. *Id.*

#### b. Analysis

Wilson and Goranson Bain first contend that monetary sanctions should not have been imposed in this case based on *Flores v. Garcia*, No. 13-15-00047-CV, 2015 WL 5895087 (Tex. App.—Corpus Christi Oct. 8, 2015, no pet.) (mem. op.). In *Flores*, an attorney suspended a deposition after his client was subjected to "abusive" questions. *Id.* at *1 (attorney "stated that he was suspending the deposition pending the trial court's ruling on a motion he intended to file to prevent [attorney] from asking

further questions that [he] felt to be abusive"). The attorney subsequently filed a motion with the trial court to instruct counsel not to ask harassing and misleading questions. *Id.* at *5. Opposing counsel then filed a motion for sanctions requesting that the trial court compel the deposition to resume and assess sanctions. *Id.* The trial court assessed sanctions and the court of appeals reversed concluding that the attorney "articulated a legitimate ground for suspending the deposition and followed the procedure specified in Texas Rule of Civil Procedure 199.5 to do so and obtain a ruling on his motion." *Id.* at *5.

Wilson and Goranson Bain argue that their case is even stronger than *Flores* because their verified plea contesting the trial court's jurisdiction was already filed. We disagree. In *Flores*, the parties started the deposition and an issue arose during the deposition that led to the deposition's suspension. As we stated above, rule 199.5(g) applies to events that arise during a deposition—the expiration of time or conduct or defense of the deposition not complying with applicable rules. Here, the deposition was suspended for an issue that did not arise from the time or manner of deposing the witness and had already been raised by Wilson and Goranson Bain prior to the deposition. As such, we find Wilson and Goranson Bain's reliance upon *Flores* unpersuasive.

■■■ Wilson and Goranson Bain next argue that the trial court abused its discretion by imposing monetary sanctions without considering the imposition of lesser sanctions and explaining why they would not be appropriate. Wilson and Goranson Bain rely upon *Fethkenher v. Kroger Co.*, 139 S.W.3d 24 (Tex. App.—Fort Worth 2004, no pet.) for the premise that the trial court could have compelled the deposition to continue before resorting to monetary sanctions. In *Fethkenher*, Fethkenher sued Kroger for injuries sustained by the grocery store's automatic door. *Id.* at 27. Kroger noticed Fethkenher's deposition and Fethkenher quashed it. *Id.* at 36. The parties went back and forth before agreeing to a deposition date. *Id.* Despite this agreement, Kroger filed a motion for sanctions against Fethkenher's attorney and a motion to compel the deposition. *Id.* The sanctions hearing was held eight days before the scheduled deposition and the trial court awarded $1,500 in sanctions for failure to produce Fethkenher for deposition. *Id.* In reviewing the entire record, the court of appeals noted that:

> Other, less severe sanctions would have satisfied the trial court's presumed legitimate purpose of enforcing cooperative compliance with discovery rules, especially in light of the fact that the trial court ordered sanctions prior to Appellant's scheduled, and agreed upon, date for deposition. For example, the trial court could have ordered Appellant's deposition for a specific date before imposing monetary sanctions.

*Id.* The facts in *Fethkenher* are therefore distinguishable because deposition costs had not been incurred by any party and there was an agreed date for the deposition to commence subsequent to the hearing on the motion for sanctions. The trial court here did not have the opportunity to commit an agreed, future deposition date to an order compelling it to occur and was confronted with allocating between the parties deposition costs that already had been incurred.

Wilson and Goranson Bain also cite *Jones* in support of their assertion that this Court has followed *Fethkenher*. 218 S.W.3d 929. In *Jones*, this Court noted that it had reviewed the entire record and could find no explanation for how the trial court arrived at the $15,000 amount of the sanction. *Id.* at 932. This Court concluded that the record failed to show (1) a direct relationship between the improper con-

duct, the failure to appear at depositions, and the sanction imposed in the amount of $15,000 and (2) that the trial court had considered lesser sanctions.[2] *Id.* at 933. Thus, this Court reversed the sanctions order. *Id.*

In this case, however, there is a direct relationship between the improper conduct and the sanction because the Sanctions Order set out line item amounts of specific costs incurred by Shamoun & Norman for Wilson and Goranson Bain's failure to quash the deposition.[3] In regard to the issue of whether the trial court had considered other sanctions, we note that this issue was raised by counsel for Shamoun & Norman during the hearing:

> I do want to point out that we are—the motion, originally, probably was asking for relief to death penalty sanctions and everything else like that. And this is the example that—no, I don't want that. I just—that relief being asked for, I'm withdrawing that relief that was asked for in the motion. We really just want the fees that we're asking for, the fees and expenses that we're asking for that were related to the motion. We believe that that falls under all the appropriate applicable law for levying sanctions, being that minimum sanctions that would make the point and deter future conduct. We believe that the Court in the order could certainly find that that is the minimum sanction. I made you pay for what you caused. I'm not striking any pleadings or anything else like that. And you're limiting it to the people—to the ones who were at fault.

Therefore, although more excessive sanctions had originally been requested and were discussed at the hearing, Shamoun & Norman requested that the trial court only consider the lesser monetary sanction specifically incurred due to Wilson and Goranson Bain's actions. In the Sanctions Order, the trial court also stated that it had "considered lesser sanctions, and is now of the opinion that amount ordered above adheres to guiding principles of law authorized by Rule 215.2(b)(1)-(5) and (8) and is limited to costs associated with failing to properly quash the deposition or file their Plea or a protective order timely before the scheduled deposition...." For these reasons, we conclude that the trial court appropriately considered all sanctions and could have determined the sanctions imposed to be the lesser sanctions of the alternatives presented. Accordingly, we find that the principles addressed in *Jones* support the trial court's award of sanctions in this case.

For these reasons, we conclude that the trial court did not abuse its discretion in awarding monetary sanctions in the amount of $1,837.50 and resolve Wilson and Goranson Bain's fourth issue against them.

### CONCLUSION

Having decided Wilson and Goranson Bain's four issues against them, we affirm the trial court's judgment.

**2.** In *Jones,* this Court noted that at the time the sanction was imposed, the employees had complied with the trial court's discovery order. 218 S.W.3d at 933. Thus, this Court only referenced the *Fethkenher* decision in support of the assertion that "[w]hile sanctions also serve to punish offenders and deter others, these purposes could have been served by less severe sanctions." *Id.*

**3.** The trial court granted sanctions totaling $1,837.50 itemized as follows: (1) deposition preparation ($106.25); (2) travel to and from the deposition ($531.25); (3) prepare motion to compel and for sanctions ($350); (4) review and revise motion to compel and request for sanctions ($350); and (5) cost of deposition ($500).